## POTTER v. RANLETT.

1. CONTRACTS—RESCISSION—EXECUTORS—POWER OF SALE.

One who contracts to purchase land from executors, expecting to receive a deed at once, is justified in rescinding the contract on learning that the executors have no power to sell under the will, even though they offer to indemnify him against loss if he will allow the contract to stand, and accept a deed when they can procure one.

2. SAME—DECREE—COLLATERAL ATTACK.

The executors cannot in such case defeat the vendee's right to a rescission by showing that a decree has been rendered by the judge of another circuit, in a proceeding to which the vendee was not a party, instituted after they had received notice of the vendee's intention to rescind, whereby their right to sell the lands in question is sustained; for while such decree, though erroneous, would not be subject to collateral attack, it could not control the relations of parties whose *status* was properly to be determined with reference to a time prior to the institution of the proceedings wherein the decree was rendered.[1]

3. WILLS—TRUST—POWER OF SALE.

A devise to executors in trust, to pay the income annually to the testator's daughters, and to the survivor of them, for life, the trust estate, after the death of said daughters, to go to their children in equal proportions, does not confer a power of sale upon the executors.

---

[1] Upon an application for a rehearing, the court entered a supplemental decree, wherein, among other things, it was stated: "It seems to this court that complainant, in agreeing to purchase the land in question, did so expecting to get a deed for the same within a few days after he paid the $10,000 on the purchase money and executed the mortgage of $20,000 to secure the balance, and that, under the circumstances of the case, when the question of doubt arose as to the right of the trustees to sell him the land, he was not bound to wait until the question was settled, but had a right to insist upon having the money he had paid on the contract returned to him, together with his notes and mortgage. * * * This decree is made without prejudice in any respect to the decree made in the circuit court for Ionia county, in chancery."

Appeal from Cass; Coolidge, J.   Submitted January 25, 1898.   Decided March 29, 1898.

Bill by Willard M. Potter against David D. Ranlett, Albert Tuttle, and Oliver C. Townsend to rescind a contract for the purchase of land.   From a decree for complainant, defendants appeal.   Affirmed.

*Howell & Carr*, for complainant.

*Lemuel Clute*, for defendants.

LONG, J.   There is little or no controversy over the facts in this case.   It appears that James R. Langdon, of Berlin, county of Washington, in the State of Vermont, died September 20, 1895, testate, at the age of 82 years, leaving an estate valued at $2,320,757.20.   He owned real estate in Vermont, New York, Illinois, and Michigan; that in Michigan being valued at $39,600.   The land in controversy in this suit consists of 2,040 acres of woodland, valued at $30,000, situated in Crystal township, Montcalm county, Mich.   It is all contiguous.

Langdon's will was probated in the probate court at Montpelier, Vt., October 24, 1895.   It was also probated in Michigan on January 10, 1896, in the probate court of the county of Ionia.   The two defendants David D. Ranlett and Albert Tuttle are the executors and trustees named in the will, and both reside in Vermont.   The other defendant, Oliver C. Townsend, is a banker at Hubbardston, Mich., and was agent of the deceased in his lifetime, and was continued as agent by the executors after his death.   The complainant, Willard M. Potter, then a resident of Petoskey, on February 25, 1896, after negotiations with the agent by letter and otherwise, purchased from defendant Townsend, as agent of the executors, the aforesaid 2,040 acres in Montcalm county, for the sum of $30,000, and made his first payment of $10,000 in cash, and took a receipt therefor.   This receipt is the only writing in relation to the contract, except certain letters.

By the terms of the agreement, the remaining $20,000 was to be paid in two equal annual payments, with interest at 6 per cent., and a deed was to be executed by the executors in a few days after the first payment. By the understanding, complainant was given the right of immediate possession of the land, and the right to place his mills thereon, and operate them in cutting and removing the timber. In keeping with this understanding and agreement, the complainant did, on or about March 1, 1896, commence cutting and hauling timber, he having in the meantime moved his sawmill from Petoskey to the land, and his family to the city of Grand Rapids. Shortly after the cutting of the timber commenced, defendant Townsend informed complainant that the executors were withholding the deed until the $20,000 was properly secured. Thereupon complainant, on or about March 18, 1896, secured the payment of the $20,000 by personal security (two notes), and by a mortgage signed by himself and wife, covering 238 acres of land in Cass county, together with the land in question, and delivered the same to Townsend, who received it as agent, with the express understanding that Townsend was to hold the same in trust for complainant, and was not to deliver it to the executors, and was not to have the mortgage recorded until the deed was executed by the executors, and delivered to and accepted by him. In violation of this understanding, Townsend caused the mortgage to be recorded in the register's office of Cass county, Mich., on the 28th day of March following.

Townsend had informed complainant, and complainant believed, that the executors had the power to deed under the will; and complainant did not learn that the power of the executors to execute a deed was questioned until about May 27, 1896, and he did not know until May 29, 1896, that the mortgage was recorded. He at once visited the probate court of Ionia county, and for the first time read the will of the said Langdon, and the paragraph in the will bearing upon the executors' power, as follows:

"All the residue and remainder of my estate, of every kind and description, including the real estate not herein otherwise disposed of, I give and grant to the said David D. Ranlett and Albert Tuttle, upon trust, for the following uses and purposes, that is to say : Upon trust that the said Ranlett and Tuttle, and their successors in said trust, duly appointed, shall and do pay the income and interest arising from all of said property and estate so placed in trust, and each and every year, to my said daughters, Lucy R. and Lizzie W., for their sole use and benefit, and upon their separate receipts, in equal proportions and shares, for and during the period of their and each of their natural lives; and, upon the decease of either of them, the survivor to have the said income and interest; and, upon the decease of both said daughters, said trust funds, property, and estate is to be paid over by said trustees to the children of my said daughters, in equal shares and proportions, and so to their respective heirs."

Complainant immediately took counsel as to the power of the executors to make a deed under the above paragraph, and was advised that they had no such power. He also advised with Townsend, the agent, on the question, and notified him that he would not stand longer by the contract; and upon June 15, 1896, complainant quit cutting timber on the land, and on June 22d caused his mills to shut down, having then cut all that was hauled in, and moved his mills away, and gave notice to the defendants of his intention to revoke the contract, and demanded of defendant Townsend the repayment of the $10,000, less the stumpage value of the timber cut, his notes and the mortgage, and also that the mortgage be discharged; whereupon the defendants offered to indemnify him if he would stand by the bargain, and accept a deed when they could procure one. But he refused to accept the indemnity and to stand longer by the contract, and filed his bill in this case, in the Cass county circuit court, in chancery, on the 30th day of June, 1896.

When it was fully learned that the executors, as trustees, had no power to deed under the will, they, on June 24, 1896, commenced proceedings in the circuit court for

the county of Ionia, in chancery, making the devisees and legatees in the will parties defendant, two of whom were minors and one insane, and praying for a construction of the will, and asking that a decree be granted empowering the executors to sell the lands of the estate in Michigan, at public or private sale. The complainant was not made a party to this bill.

The bill in the present case was filed for the purpose of obtaining the cancellation and discharge of the mortgage above referred to, covering the 238 acres of land in Cass county, and also for the purpose of relieving the complainant from the obligation of the contract to purchase the land. To the bill of complaint, defendant Townsend answered, August 13, 1896. He admits his agency. He admits the receipt of the $10,000, and the fact that he forwarded it to the executors. He admits the demand on him by the complainant for the mortgage and notes, and the notice of the repudiation of the contract by complainant. He admits the delay in the making of the deed. He admits the executors' inability to make the deed. The joint and several answer of the other two defendants, Ranlett and Tuttle, was not put in until December 29, 1896. They admit the agency of Townsend, and his authority to contract for the sale of the land. They also admit the receipt of the $10,000, and the fact that complainant's possession of the land, and his right to cut and remove timber, were with their full knowledge and consent. They allege that they filed a bill as complainants in the circuit court of Ionia, in chancery, submitting the question of their power as trustees, by virtue of said will, to the opinion and direction of said court; and their answer contains a copy of the decree of the Ionia circuit court, in chancery, which bears date September 15, 1896. This answer concludes with prayer for benefit of cross-bill, under Chancery Rule No. 11. To the cross-bill feature of this answer, complainant filed his answer January 1, 1897, denying, among other things, the power of the circuit court of Ionia, in chancery, to give the two

defendants Ranlett and Tuttle, as trustees, the power to make and execute a good and sufficient deed to said land, and denying the jurisdiction of the court and the relevancy of its proceeding to the present case..

The decree of the Ionia circuit court, in chancery, was rendered September 15, 1896. On November 18, 1896, the defendants tendered to complainant a warranty deed of the premises covered by the contract, with covenants in due form. This deed was afterwards tendered in open court at the trial, but both offers were refused by complainant. On January 14, 1897, the defendants presented to the circuit court of Cass county, in chancery, in this case, a petition praying for the appointment of a receiver to take possession of the land, and look after it, and to protect it from the cutting of wood and timber by trespassers; and, on the 21st of January, an order was made by that court appointing Ethard P. Clark such receiver. On the 13th of April, the receiver petitioned the court to sell the down timber and wood. The prayer of this petition was granted, and on June 9th the receiver reported to the court that he had made a public sale of all the down timber, including all that had been cut by complainant, and not hauled away, and that he realized from such public sale the sum of $750. The decree gives this sum to the executors.

The court below found that the decree of the circuit court of Ionia county, in chancery, was not binding on the complainant in this case, he not being made a party; that it would not furnish him a clear protection; and the decree declares that the contract shall be of no effect, and that the mortgage and notes be canceled and delivered up to the complainant by the defendants. The court also found that the complainant removed, from the land, timber to the value of $1,646.09, which he should account for; that the defendants Ranlett and Tuttle were indebted to him in the sum of $10,808.30, that amount being the first payment, and interest thereon at 6 per cent. from February 26, 1896, to June 30, 1897, the date of the

decree; and that from this amount should be deducted the $1,646.09; and that the balance, $9,162.21, should be paid by the defendants to the complainant in 90 days. The complainant was given a lien on the land in Montcalm county for the same, together with his costs, to be taxed, and a solicitor's fee of $100. [1]

The defendants contend:

1. That the executors had power under the will to make the deed.

2. That, when the right to convey was questioned, it became the duty of the trustees to take the advice of the court of chancery of Ionia county as to such power.

3. That the decree of the Ionia court is conclusive that the executors had such power.

4. That the interests of the unborn children of the two daughters were virtually represented by the executors.

5. That time was not of the essence of the contract, and that, therefore, the executors had a reasonable time in which to make and deliver the deed.

Whether the court below was correct or not in his views upon the various questions raised, we need not consider, as we are satisfied that the conclusion reached was correct. This property was apparently purchased by the complainant principally for the valuable timber thereon. At a large expense, he had removed his mill to the land, and commenced the manufacture of this timber into lumber, when he was advised that the executors had no power under the will to make the deed which his contract called for. He was then confronted with the question whether he should go on with his work, and take the further chances that, in the end, he might not only lose the land, but also be compelled to pay the residuary legatees under the will whatever damages they might suffer by reason of the removal of the timber. The fact that the circuit court, in chancery, of Ionia county, thereafter decreed that the executors had power to make the deed, has no bearing upon the question here involved,

---

[1] This item was disallowed by the Supreme Court on the application for rehearing.

as the complainant was not made a party to that proceeding; the real question being the *status* of the parties at the time complainant filed his bill. In order to fix such *status*, we must determine whether the will empowered the executors to make the deed. It is true that the complainant could not capriciously refuse to accept a deed, and it may be that the deed was tendered in time, if the executors, at the time of making the contract, had the power to make such deed

The provisions of the will under which the executors claimed to have power to deed have been set forth. This clause gives to the executors the property, upon trust to pay the income and interest arising each year to the two daughters for the period of their and each of their natural lives, and to the survivor of them. Upon the decease of both, the "said trust funds, property, and estate is to be paid over by said trustees to the children of my said daughters, in equal shares and proportions, and so to their respective heirs." The language is clear and unmistakable, and the intent is plain that the executors shall hold this residue and remainder of the estate (the property in controversy being included within those terms) during the lives of both daughters and the survivor of them, and then pay it over to their children or their respective heirs. It is too plain for argument that no power of sale is included in this provision. The executors only hold the estate to collect the income, and pay it over. The will itself provides where the estate after the death of the daughters shall vest.

When complainant had been advised that the executors wanted more time, and he learned of the will, he made an examination of it, and then for the first time discovered this want of power, and at once filed his bill to set aside the contract. Any other course would have been but an experiment, and might have cost him serious loss. He could not say that a court would give construction to the will permitting the executors to make sale of the

property, but had good reasons to believe that such construction would not be given.

It is not to be understood by what we have said that, if the court of chancery in Ionia county had jurisdiction of all the parties and the subject-matter, we hold the decree is not now valid and effectual, and does not give the executors power to make a conveyance of the premises. It was not appealed from, and, in a collateral proceeding, undoubtedly could not be attacked except for want of jurisdiction.

Counsel for defendants contends that the court below was in error in the amount of damages. We have carefully examined that question, and find no necessity for discussing it, as we are satisfied, not only with the method of computation, but also with the amount found.

The decree of the court below must be affirmed, with costs in favor of complainant.

The other Justices concurred.