GOING *v.* OAKLAND COUNTY AGRICULTURAL SOCIETY.

1. LAND CONTRACTS—RESCISSION—CURATIVE STATUTES.

   The right of the vendee in a land contract to rescind the same upon its appearing that the vendor is unable to give title as represented is not affected by a curative statute to perfect the vendor's title, passed subsequent to the announcement of rescission and the institution of suit to recover moneys paid upon the contract.

2. SAME—QUIETING TITLE—RES JUDICATA.

   Where a vendor of lands sold under contract, in a suit to which the vendee is made a party, obtains a decree quieting his title to the lands, subject to the contract, and declaring the contract legal and valid, the vendee, while such decree remains undisturbed, is precluded from rescinding the contract on the ground that the title is imperfect.

Error to Oakland; Smith, J. Submitted April 26, 1898. Decided May 24, 1898.

*Assumpsit* by Charles H. Going against the Oakland County Agricultural Society to recover moneys paid upon certain land contracts. From a judgment for plaintiff on verdict directed by the court, defendant brings error. Reversed in part.

*A. & S. H. Perry*, for appellant.

*James H. Lynch*, for appellee.

LONG, J. This action is based upon 10 land contracts made by Joseph S. Stockwell, as trustee of the defendant society, to the plaintiff. It was tried before a jury, and the court directed a verdict in favor of plaintiff for $1,100.75.

The defendant society was organized November 20, 1872, under the statute providing for the incorporation of agricultural societies. After its organization, it entered

into possession of certain real estate situate in 'the city of Pontiac, and continued to occupy the same, and to hold one or more fairs thereon each year, until 1895. At that time it became financially involved. At a regular meeting in January, 1895, the members passed unanimously a resolution purporting to authorize its board of directors to sell all its fair grounds, and purchase others. The lands held were valuable for residence purposes, and the board caused them to be platted into 102 city lots, and arranged for an auction sale thereof; and, in order to facilitate a sale and conveyance thereof, the board executed a deed of conveyance of all the lots to Mr. Stockwell, as trustee, for the use and benefit of the corporation, and, on June 20th following, all said lots were sold at public auction to numerous purchasers. At that sale, plaintiff bid off 10 lots, and entered into contracts with the trustee for the purchase; payments to be made on or before three years from date. Plaintiff at once took· possession of the lots, and made improvements thereon. It appears that the defendant, in making the sale, neglected to comply with section 2308, 1 How. Stat., which provides, among other things:

"The said society may, in case the uses and convenience thereof so require, upon application to the circuit court of the county where such society is organized and located, obtain and have authority to sell, from time to time, the whole or any part of its real estate, the granting of such authority to be in the discretion of the court; and such application to be made only when authorized by said society, at an annual meeting thereof, by a vote of not less than two-thirds of the members of such society present at such meeting, and notice of the intention to vote for such application having been published in some newspaper published in said county," etc.

No application was made to the circuit court for that county for authority to make the sale.

Defendant claims that, soon after such sale, it purchased, at great expense, other lands, in another part of the city, for fair-ground purposes, entered into possession thereof, and made improvements thereon.

In the meantime a question was raised as to the society's title to outlot 15; being about six acres of the land so sold by defendant, and which had been formerly owned by Moses Wisner and others. It was also questioned whether the heirs of Mr. Wisner did not have some interest in the said six acres. Six of the lots purchased by plaintiff were situate in this six acres. Thereupon the defendant and the trustee, on December 18, 1895, filed a bill in the circuit court in chancery for Oakland county, setting forth all the facts in the premises, making the plaintiff and the heirs of Mr. Wisner, and numerous other parties, defendants, and praying for a decree quieting the title to said lands, subject to all land contracts made by Stockwell as such trustee, and also praying—

"That said Oakland County Agricultural Society may be decreed to have had the right to sell and convey all said lands and premises at the time said auction sale was held as aforesaid, and at the time said deed in trust was made to said Stockwell."

The plaintiff did not appear in that case, and the bill was taken as confessed as to him. The Wisner heirs appeared, and some of them answered the bill; and on March 17, 1896, a decree was made and entered in said cause quieting the title to said six-acre parcel, subject to deeds and contracts made by said trustee, and further decreeing—

"That at the time the said complainants caused said lands on said outlot 15 [being the six acres in question] to be sold at auction, on June 20, 1895, the said Oakland County Agricultural Society and the said Joseph S. Stockwell, as its trustee, had legal right and authority to sell and convey all the lots and lands situated on said outlot 15 in fee simple, and that the several contracts to convey the same to the several defendants in this cause, made by said trustee, are legal and valid contracts; and the absolute and unconditional title in fee simple of all the lands and premises contained in said outlot 15, excepting said lots 23, 24, 28, and 31, is hereby decreed to be in, and quieted in, Joseph S. Stockwell, the complainant, for the use and benefit of said Oakland County Agricultural

Society, subject to all contracts made by him as such trustee to convey the same to any and all the defendants in this cause, in accordance with the terms and conditions of said contracts," etc.

So far as appears by this record, this decree stands unaltered and unrevoked.

In January, 1897, in order to cure the informality in not following the statute as to the preliminary proceedings required in order to authorize the sale by the society, the legislature passed an act, which was approved January 20, 1897, which, after reciting the facts hereinbefore stated, and also reciting that no legal proceedings of any kind had been commenced by any person for the purpose of avoiding or invalidating any such proceedings, and that there was no litigation pending with reference to any of said matters, provides —

"That all the said proceedings be and the same are hereby ratified, confirmed, and made valid, to the same extent as though said section of said annotated statutes had been fully complied with in making said sales; and the said plat, and the said deed in trust to the said Stockwell, and the said auction sale, and all deeds and contracts made by the said Stockwell as such trustee in pursuance thereof, are hereby ratified, confirmed, and made valid." Act No. 291, Local Acts 1897.

It is the claim of the defendant that this curative act reverted to the time of the sale, and made the acts done then as valid as though the formalities in question had been followed.

It appeared on the trial that the plaintiff knew nothing of the necessity of obtaining the permission of the circuit court to make a valid sale, or of any mistake on the part of the society in making it before an order of the court was obtained, until the bill was filed to perfect such sale. After that time, and about the 1st of June, 1896, he made a tender of the amounts due upon his contracts. No deeds were made at that time; but on the trial it appeared that on June 18, 1896, a deed was duly made and executed by Mr. Stockwell to the plaintiff, conveying all the lands

described in all the contracts, and tendered to the plaintiff. The plaintiff thereafter refused to accept the deed, and made a demand for repayment of the amount paid by him on the contracts, and for the value of the improvements made by him on the said lots.

The court, having substantially recited these facts in his charge to the jury, said:

"Now, upon these facts, I deem it my duty to take the case from the jury, and direct a verdict for the plaintiff or the defendant; and with me it all turns upon the question of whether a curative statute would bind Mr. Going, or whether it will not.  *  *  *  The witnesses are substantially agreed that the sale on June 20, 1895, was preceded by the opening statement of Mr. Davis, as president of this society, that the title of the society to these lots was perfect; that it had submitted the matter to learned and eminent attorneys, who advised that the society could give a good and valid title to purchasers, and that the title was all right.   Mr. Davis himself was an attorney, as well as president, and it is probable that this fact gave added weight to his statement.   A fair interpretation of these statements made on behalf of the defendant is that intending purchasers understood that they could safely bid off these lots, relying upon no serious loss or injury from defects in title, or omissions by the society to procure the requisite authority to sell.   Mr. Going had a right to rely upon these statements in making his bid.   Mr. Davis need not have made such statements, but they were made to induce buyers to purchase; and, while he did not so intend, they were untrue, in law.   Having made them, he was bound to know that they were true.   While he did not intend to make false statements, yet, having made them, he was bound to know that they were true, before asking bidders to act on them.   Mr. Going's attorney has omitted to ask the question, but it is plainly evident, from his conduct, and from all the circumstances surrounding the case, that Mr. Going would not have bid the prices he did at the sale, had he not relied upon Mr. Davis' statement; and it is quite probable that had he known that he must wait until January, 1897, for a curative statute to perfect the title, he would not have purchased the lots at all, nor any of them.

"There is no claim by counsel for plaintiff, nor is there by the court, that Mr. Davis or the society intended to de-

fraud Mr. Going when the statement of Mr. Davis was made, because they were all ignorant of 1 How. Stat. § 2308, requiring an order from the circuit court; but, while not so intended, the legal effect of the statement was to perpetrate a fraud upon him, by inducing and persuading him to purchase lots, and pay prices for them, which he would not otherwise have purchased, or paid, but for his reliance upon the representations; or, to speak more accurately, the wrong consisted in compelling him to keep lots purchased on the faith of such statements, after it was found they were not true in fact. The contracts were therefore such as originally were inequitable and unjust, and such as Mr. Going had originally a right to rescind. For that reason it follows that the legislature could not force him to abide by them, without his assent, unless he is estopped by his statements, acts, and conduct.

"To constitute one's acts and statements an estoppel, they must have been done and made with a full knowledge of the facts. There is no claim that Mr. Going knew of this cloud against the title until after March 17, 1896. His contracts contained these provisions: 'Payments can be made on or before they become due; and it is further covenanted by and between the parties hereto that on the performance of all the conditions to be done and performed, at the time and manner above mentioned and specified, on behalf of said party of the second part, that the said party of the first part shall execute a good and sufficient warranty deed to such party of the second part.' He tendered the money under the first of these clauses. * * * There was a failure to deliver the deed for a short time, but the society was entitled to a reasonable length of time. The tender was a valid one, under the circumstances, when Stockwell expressed his satisfaction with the amount; and Mr. Going was, within a reasonable time, entitled to such a deed as Mr. Davis' statements and his contracts fairly imply. At that date the society could not give such a conveyance. No one could then know positively that a curative or healing act would ever be passed, or, if so, when. It is quite probable that, if local sentiment had been such as to influence the members from Oakland county to oppose it, no such act could ever have been passed. Mr. Going was not bound to accept the title with a cloud of this character upon it; and I discover nothing in his conduct between March 17, 1896, the date when he became possessed of this information as to this cloud, and the date of this refusal, that would estop him from refusing it. * * *"

The court thereupon directed the verdict in favor of plaintiff for the amount paid by him on the contracts, with 6 per cent. interest from the date of the tender, and also for the value of the improvements made by him on the premises.

For the purpose of the discussion of the case, we shall treat of the four lots not included in this six-acre tract. The proceedings in the circuit court, in chancery, to quiet title, had no reference to these four lots; so that the defendant's claim that it could convey a good title must rest on the curative act of 1897. It must be conceded that the defendant corporation could not sell and dispose of this real estate without pursuing the method pointed out by the statute, and that the contracts, and consequently the deeds tendered to plaintiff in June, 1896, were invalid. Does the curative act aid the defendant, as to these four lots, in its claim now presented? We think not. On December 3, 1896, the plaintiff demanded the money paid by him on these contracts, as well as the money paid for improvements. The demand was refused. This was before the curative act was passed. We think that at that time the plaintiff had the right to have his demand complied with, as to these four lots. He purchased the property for speculative purposes, and, under his contracts, had the right to pay the whole contract price at any time, at his option. He had tendered before that the whole amount remaining unpaid on the contracts. He was not compelled to await the action of the legislature for the defendant to perfect the title sought to be conveyed by the defendant to him. Plaintiff was making improvements on the property, and when he found that the corporation had not conveyed the title, by reason of the defect in not complying with the statute, he was not bound to wait longer for a title to be perfected. He could not capriciously refuse to accept a deed; and if, when the deed was first tendered to him, the defendant had had a good title, undoubtedly the tender would have been in time. But, before the act was signed by the governor, this

action was commenced. At the time of the commencement of the action, therefore, the curative act was not in force. We think it did not aid the defendant's case that a tender of the deed was made after the act was approved. The *status* of the parties, if not fixed by the demand of the return of the money on December 3, 1896, certainly was fixed by the commencement of suit. The case falls, very clearly, within *Potter* v. *Ranlett*, 116 Mich. 454. The court was therefore not in error in directing the verdict for plaintiff, so far as these lots are concerned.

The other lots—those on outlot 15, being the six acres in which the Wisner heirs claimed some interest, and in reference to which the bill in chancery was filed—stand in a different position, so far as the rights of the parties are concerned. The plaintiff was made a party to that suit. The prayer of the bill has been heretofore set out, and it is unnecessary to repeat it; but it shows just what relief the defendant corporation was asking, and the decree grants the relief prayed. The plaintiff himself has made no motion to disturb that decree. It must be treated as *res adjudicata* as to him, and conclusive upon all the parties and their privies. *Kent County Agricultural Society* v. *Houseman*, 81 Mich. 609. Therefore, so far as the parties to this action are concerned, the question was settled in that suit that the defendant had conveyed a good title by these contracts. The decree was made and entered March 17, 1896, which was before the time plaintiff made his tender of the money on the contracts. That tender was made the fore part of June, 1896, and the deeds under the contracts tendered to plaintiff on the 23d of that month.

Some question was raised on the trial that the decree entered in the chancery cause was not the decree which the court intended to make. But that decree is set out in the record, and, so far as appears by this record, stands unreversed and undisturbed, and is binding upon the parties.

The court was in error in directing the verdict in favor

of plaintiff for the lots covered by the decree. The judgment must be reversed as to those lots, and a new trial ordered.

The other Justices concurred.