(March 12, 1913.)

## BELLE S. SMITH, Appellant, v. FRANCES M. DAVIDSON, Respondent.

[130 Pac. 1071.]

REAL ESTATE—QUIETING TITLE TO—ASSESSMENT—TAX DEED—PRIMA
FACIE CASE—SUFFICIENCY OF EVIDENCE—TAXES—OFFER TO PAY—
EQUIVALENT TO PAYMENT.

    1.  Where a person offers to pay the taxes on his land and is informed by the proper officer that there is no tax to be paid on such land, and he relies on such statement in good faith, a subsequent tax deed based on such tax will not pass title.

    2.  Under the facts of this case, *held,* that the evidence is sufficient to sustain the findings of the trial court.

APPEAL from the District Court of the Third Judicial District for Ada County.   Hon. Carl A. Davis, Judge.

Action to quiet title to certain real estate based on a tax deed.   Judgment for defendant.   *Affirmed.*

B. F. Griffith, for Appellant.

Respondent at all times was properly informed as to the facts: That the property was assessed; that the taxes were a certain amount; that they had not been paid; that she had not been credited with an exemption; and that if an exemption was granted, it would have to be by the board of county commissioners.

It is not the duty of the assessor to interpret or dispense the law; his duty is limited to a statement of facts as to what his records show, and neither he nor the public are bound or liable for anything beyond that. (*Conklin v. Cullen,* 29 Mont. 38, 74 Pac. 72; *State v. Tufts,* 108 Mo. 418, 22 S. W. 91; Black on Tax Titles, sec. 362; *Hawyard v. O'Connor,* 145 Mich. 52, 108 N. W. 366.)

"The duties of the collector are prescribed by statute, and all inquiring in regard to taxes are bound to take notice of

the extent of his authority; his statements or his mistakes as to unpaid taxes can never, therefore, operate, so far as the district is concerned, as an estoppel." (*Elliott v. District of Columbia,* 3 McAr. (D. C.) 396.)

The county assessor's duties are prescribed by law, and the taxpayer is chargeable with notice of the scope of his authority and the power with which he is vested and limitations thereof. (*First Nat. Bank v. Washington County,* 17 Ida. 306, 105 Pac. 1053.)

Davidson & Davison, for Respondent.

In this case it is admitted by the record that the deputy assessor informed respondent that there would be no taxes against the property by reason of the fact that she was a resident widow. (*Inland Lumber Co. v. Thompson,* 11 Ida. 508, 114 Am. St. 274, 7 Ann. Cas. 862, 83 Pac. 933; 2 Cooley on Taxation, 3d ed., p. 910.)

We contend that by reason of the conduct of the county assessor the county and its assigns under the tax sale should be estopped from passing title to the defendant's property.

Where a party is ready and willing to pay taxes upon any property, and is informed by the person authorized by law to collect the tax that no taxes are due on the particular property, a valid sale cannot be made. (*Tracey v. Irwin,* 18 U. S. 549, 21 L. ed. 786; *Hoffman v. Auditor General,* 136 Mich. 689, 100 N. W. 180; *Haywood v. O'Connor,* 145 Mich. 52, 108 N. W. 366; *Nelson v. Churchill,* 117 Wis. 10, 93 N. W. 799; *Breisch v. Coxe,* 81 Pa. 336; *Pottsville Lumber Co. v. Wells,* 157 Pa. 5, 27 Atl. 108.)

SULLIVAN, J.—This action was commenced by the plaintiff on October 23d, 1911, to quiet title to ten acres of land situated in Ada county. The respondent filed her answer and cross-complaint, setting forth in substance that her true name was Frances M. Nelson and that she was formerly Frances M. Davidson; denied the ownership and possession of said land in plaintiff, and set up in her cross-complaint that she was a resident widow of this state from November, 1904, until

April, 1908; that she purchased said land on May 8, 1905, and entered into the possession thereof, and has been in the possession ever since said date; that between the 8th day of May, 1905, and the 5th day of July, 1905, the assessor of Ada county assessed said land in the name of ''Mrs. Davidson''; that at the time of said assessment said premises were uncultivated and unimproved, with the exception of a barn situated thereon, in which defendant resided with her minor children; that said property was assessed on the assessment-roll for the year 1905 at $250, and was subsequently raised ten per cent by order of the board of equalization; that respondent did not have any other property during the year 1905 than said land, and that the assessed valuation of said property did not exceed the sum of $5,000, and that neither the defendant nor her minor children were allowed any exemption; that the claims of plaintiff are based on a certain pretended tax sale of said land for delinquent taxes for the year 1905, made to one Hoseley on the 18th day of July, 1906; that between the fourth Monday of May, 1906, and the first day of July, 1906, respondent was informed that said property had been advertised for sale for delinquent taxes for the year 1905; that respondent thereupon called at the office of the assessor and tax collector, and informed him that she was a resident widow of the state at the time said property was assessed to her; that the assessor thereupon informed her that said property was not liable for taxes and that the same would be stricken from the delinquent list; that at said time the respondent was ready and able to pay said taxes and penalty thereon; that she relied upon the assessor to cancel the taxes against the property as agreed by him, and thereafter did not pay said delinquent taxes; that thereafter, and before the commencement of this action, defendant constructed buildings and improvements on said land to the value of $2,500.

Issues were thus joined and the trial was had before the court without a jury and findings of fact were made and judgment entered in favor of the respondent, quieting her title to said land. The appeal is from the judgment.

There is very little dispute, if any, as to the facts established by the evidence, which are substantially as follows: That the respondent was at all times during the years 1905 and 1906 a resident widow of the state of Idaho and owned no property excepting the land in controversy, and that the assessed valuation of said land involved in this case did not equal the exemption allowed by statute to resident widows; that on the 8th day of May, 1905, the defendant purchased said land and took possession thereof, and was in possession at the time said assessment for the year 1905 was made; that the deputy assessor listed said land, informing respondent at the time of said assessment that she was entitled to an exemption of more than the assessed valuation of said land, and that she would not have to pay any taxes upon the property for the year 1905; that the defendant relied upon said statement of the deputy assessor and made no attempt to pay the taxes before they became delinquent; that some time after May 28th, and prior to the 18th of July of the same year, the respondent was informed that said property had been advertised for sale for delinquent taxes, and she thereupon called at the office of the assessor and *ex-officio* tax collector of said county for the purpose of paying said delinquent taxes, if any were due, and after a statement to the assessor of the facts and conditions concerning said assessment, she was informed by said assessor that said land was not liable for taxes, and that he would secure a rebate from the county commissioners to the tax collector for said taxes, and that respondent was by said statement prevented from paying the taxes upon said land; that the assessor, through oversight or otherwise, did not cause said land to be stricken from the delinquent list, and that thereafter said land was attempted to be sold for delinquent taxes for the year 1905; that since the time said taxes were levied for the year 1905 the respondent has been at all times, and now is, in possession of the land in controversy and has paid all taxes levied thereon, excepting those for which said sale was made, and has improved said land by expending between $2,500 and $3,000 thereon; that the delinquent assessment-roll for the year 1905 was published

on the fourth Monday of May, being the 28th day of May, 1906, and that said notice fixed the time for the sale of the property as the 16th day of July, 1906; that the property was sold, or attempted to be sold, on the 18th day of July, 1906, and that the tax deed and tax certificate are silent as to any adjournment made on the 16th day of July, 1906, to any other date for the purpose of making sale for delinquent taxes for that year; that the appellant purchased the tax sale certificate on the 13th of September, 1911, and a tax deed dated September 14, 1911, was issued to her under said certificate. The appellant relies solely on said tax deed.

The insufficiency of the evidence to support the findings is the main assignment of error.

If we concede that the tax deed made a *prima facie* case in favor of the appellant, we are satisfied that such case was overcome by the evidence contained in the record. The evidence shows that the deputy assessor at the time the assessment was made informed the defendant that she would not have to pay taxes on said land. The evidence also shows that a short time after the publication of the delinquent tax list and before the sale, respondent and her son in law called at the office of the tax collector for the purpose of paying said taxes in case the tax collector concluded she must pay them, and there informed the deputy that she was ready and willing to pay them; but the deputy informed her that the property was exempt, and that it would not be sold at said tax sale. Her son in law testified to the same state of facts, and the tax collector testified as follows: "Q. You may state as nearly as you can remember what was said at that time. A. Why, it seems that Mrs. Davidson's name had gotten on to the delinquent assessment-roll; they had discovered it and come to the office to see about paying the taxes; asked to pay them and I looked it up pretty carefully, inquired into her ownership; made list for application for rebate, and told her she would have to pay no taxes. Q. Told her she would not have to pay taxes? A. Yes. Q. She informed you at that time she would pay the taxes if any were due on the prop-

erty? A. Yes, she said she would pay them if we wanted her to.''

The law is well settled that where a party is ready and willing to pay taxes upon any property, and is informed by the person authorized by law to collect the tax that no taxes are due on the particular property, a valid sale cannot be made.

The case of *Tracey v. Irwin*, 18 U. S. 549, 21 L. ed. 786, involved the sale of property attempted to be made by a tax commissioner of the United States. It appears that the commissioner under the act in question had laid down a ruling that no payment of taxes could be made before sale by any person except the owner and could not be made by an agent. The agent of the absent owner called upon the tax collector to pay the taxes and was informed that the owner must pay them himself. The court held that the tax commissioner had no authority to make that ruling. After the premises were advertised for sale, the agent of the owner called about the payment of taxes but made no formal offer to pay them because it was in effect waived by the commissioner's order. The court held that it was difficult to see how under that state of facts the case could be sustained, as the law does not recognize the doing of a futile act, as would have been the tender of payment after the commissioner had declined to receive the tax.

In the case of *Hoffman v. Auditor General*, 136 Mich. 689, 100 N. W. 180, the court quotes with approval from *Kneeland v. Wood*, 117 Mich. 176, 75 N. W. 462, as follows:

''It is held in numerous cases that if a land owner in good faith applies to the proper officer for the purpose of paying his taxes, and is prevented by the mistake, wrong, or fault of the officer, such attempt to pay is equivalent to payment.''

In *Haywood v. O'Connor*, 145 Mich. 52, 108 N. W. 366, the court held that it was equivalent to a payment of other taxes, if any, where a county treasurer, at the time an owner paid his state and county taxes against his land, assured the owner that there was no other tax against the land.

In *Nelson v. Churchill,* 117 Wis. 10, 93 N. W. 799, it is held that where a person makes an offer to the proper person to pay the taxes on his land for a particular year, and is informed that there is no tax to be paid, and relies thereon in good faith, a subsequent tax deed based on such tax will not pass title.

In *Breisch v. Coxe,* 81 Pa. 336, it is said:

"A *bona fide* attempt to pay all the taxes, frustrated by the fault of the treasurer, stands as the equivalent of actual payment."

In *Pottsville Lumber Co. v. Wells,* 157 Pa. 5, 27 Atl. 408, it is held that a land owner who goes to the treasurer's office to pay all overdue taxes and thus prevent a sale of his land, and he explains his business to the treasurer, and pays all taxes demanded of him, has the right to rely on the treasurer's statement, and need not search the tax-books for further taxes charged against his land.

In the case at bar, the respondent had a right to rely upon the tax collector's statement. The law and equities under the facts of this case are all with the respondent.

The judgment must be affirmed, and it is so ordered, with costs in favor of respondent.

Ailshie, C. J., and Stewart, J., concur.