RATAJCZAK, Plaintiff-Appellant, v. CARNEY et, Defendants-Appellees.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23705. Decided June 6, 1956.

516

Woodle & Wachtel, Edwin F. Woodle, of Counsel, for plaintiff-appellant.

Frank T. Cullitan, County Prosecutor, Frederick W. Frey, Asst. County Prosecutor, for defendants-appellees.

## OPINION

By KOVACHY, PJ:

This is an appeal on questions of law and fact from a judgment entered in favor of the defendants by the Common Pleas Court of Cuyahoga County. The cause here was tried de novo on the pleadings, agreed statement of facts, briefs and arguments of counsel.

The petition of the plaintiff prays for a decree vacating and setting aside a delinquent tax sale of a portion of certain real estate owned by the plaintiff.

The defendants are the county auditor, the county treasurer and the purchaser at the delinquent tax sale.

The answers of the defendants, in general, aver that the real estate of the plaintiff included two parcels of land; that the taxes of one parcel became delinquent; that said parcel was forfeited to the State of Ohio and duly and properly sold to Max Sablack, who received a deed thereto and now has good title.

*   *   *   *   *

On August 14, 1946, the plaintiff was the wife of Henry J. Akuszewski. On said date she entered into a property settlement agreement in a divorce proceeding pursuant to which on August 15, 1946, she took title to certain real estate bounded on the south by Harvard Avenue and on the north of Cassius Avenue in the City of Cleveland. The warranty deed transferring the property describes the premises as a single parcel of land 242 feet deep and reads as follows:

Situated in the City of Cleveland, County of Cuyahoga and State of Ohio, and known as being a part of sublot No. 29 in James Eastwood's subdivision of part of original 100 acre lot No. 457, as shown by the recorded plat of said subdivision in Vol. 9 of Maps, page 37 of Cuyahoga County Records, and also part of original 100 acre lot No. 457, bounded and described as follows:

Beginning on the center line of Harvard Ave. S. E. (formerly Hamilton St.), at its intersection with the southerly prolongation of the westerly line of sublot No. 1 in said James Eastwood's subdivision; thence westerly along said center line of Harvard Ave. S. E., 62 feet to the southeasterly corner of land conveyed to Elnora Fletcher Lillie, by deed dated May 10th 1900 and recorded in Vol. 753, page 554 of Cuyahoga County Records; thence northerly along the easterly line of land so conveyed to Lillie, 132 feet to the southerly line of said sublot No. 30 in said James Eastwood's subdivision; thence easterly along the southerly line of said sublot No. 30, 10 feet to the southeasterly corner thereof; thence northerly along the easterly line of sublot No. 30, 33 feet to the southwesterly corner of sublot No. 29 in said James Eastwood's subdivision; thence easterly along the southerly line of said sublot No. 29, 10 feet; thence northerly parallel with the easterly line of said sublot No. 29, 77 feet to the southerly line of Cassius Ave S. E. (formerly Eastwood Ave.); thence easterly along the southerly line of Cassius Ave., S. E. 40 feet to the northwesterly corner of sublot No. 28 in said James Eastwood's subdivision; thence southerly along the westerly line of said sublot No. 28 and along the westerly line of sublot No. 1 in said subdivision, 242 feet to the place of beginning, as appears by said plat, be the same more or less, but subject to all legal highways.

The records in the office of the defendant, John J. Carney, County Auditor, however, list the premises as two adjacent and adjoining parcels, one numbered 136-8-16 fronting on Harvard Avenue, and the other numbered 136-8-10 fronting on Cassius Avenue. A single family residence, which the plaintiff occupies as her home, is located at the southerly end of parcel No. 136-8-16, and is known as 9607 Harvard Avenue. Parcel No. 136-8-10 is unimproved except for green lawn and has no visible dividing line from parcel No. 136-8-16. It is in the "back yard" of the residence property, extending northerly in an unbroken line to Cassius Avenue. The plaintiff was wholly unaware of the fact that the land described in her deed as one parcel of land was listed as two separate parcels on the maps in the office of the County Auditor.

Although the plaintiff notified the County Treasurer of the fact that she had acquired title and was the sole owner of the parcel of land

518

Cassius Ave.

40'

136-8-10

77'

←Forfeited Lot.

10'   40'
     50'

25'

10'

136-8-16

145'

132'   132'

10'   50'

Harvard Ave.

Exhibit "A"

N
W ← → E
S

Plat of situation described in agreed statement of facts, as shown in Auditor's Map, Book 136.

(Scale: 1/4" = 10 feet)

The measurements in the exhibit appearing on this page do not accord with the description in the deed and are, therefore, obviously inaccurate. However, since no questions are raised in this case with respect to the areas of the property involved, the discrepancies are of no moment in the determination of the issues in the case.

described in the warranty deed, she, semi-annually, only received bills for the real estate tax on the portion of her land fronting on Harvard Avenue and listed on the County Auditor's records as parcel No. 136-8-16. These taxes she paid promptly and at no time became delinquent with respect to them. Real estate taxes for the parcel listed on the County Auditor's records as parcel No. 136-8-10 were not included in the tax bills sent to her, but she was of the belief that the bills being sent her covered the entire property and that she was paying all the taxes assessed against the property transferred to her in the deed. In any event, she at no time knew that the tax bills sent her did not include taxes on parcel No. 136-8-10 and that she was delinquent with respect to them from the time of transfer on August 15, 1946. Her former husband had paid the taxes until then. As a direct consequence of this, parcel No. 136-8-10 was put on the forfeiture List by the Board of Review, was advertised according to law and then was sold by order of the Common Pleas Court on July 16, 1952. The defendant, Max Sablack, purchased it for $100.00 and received an auditor's deed. The tax delinquency at the time was $52.54. Veronica S. Ratajczak received no actual notice of the forfeiture proceedings and knew nothing of them prior to the date of the sale. She changed her last name from Akuszewski to Ratajczak, her maiden name, in 1947.

*     *     *     *     *

Under the Statutes of Ohio, a county recorder shall not record any deed of absolute conveyance of land until it has been presented to the county auditor, and by him endorsed "transferred." Sec. 317.22 R. C.

The county auditor upon the presentation of title to land "shall transfer any land or town lot or part thereof * * * charged with taxes on the tax list, from the name in which it stands into the name of the owner, when rendered necessary by a conveyance * * *." Sec. 319.20 R. C.

Under §5713.09 R. C., the county commissioners are authorized to designate the county engineer to provide "for making, correcting, and keeping up to date a complete set of the tax maps of the county * * *. Such maps shall show * * * all transfers of property, showing the lot or parcel of land transferred, the name of the grantee, and the date of the transfer, so that such maps shall furnish the county auditor, for entering on the tax duplicate, a correct and proper description of each lot or parcel of land offered for transfer. Such map shall be for the use of * * * the auditor, and shall be kept in the office of the auditor." (Emphasis ours.)

The auditor then, under §319.28 R. C., is required to prepare a general tax list and general duplicate of real property on or before the first Monday of August and in so doing "shall compile and make up, in tabular form and in alphabetical order, separate lists of the names of the several persons * * * in whose names real property has been listed in each * * * municipal corporation * * * in his county, placing separately, in appropriate columns, opposite each name, the description of each tract, lot or parcel of real estate, the value of each tract, lot or parcel, the value of the improvements thereon, * * *. Such lists shall be prepared in duplicate. * * * the auditor shall * * * on the first day of October

deliver one copy thereof to the county treasurer. The copies prepared by the auditor shall constitute the auditor's general tax list and the treasurer's general duplicate of real * * * property for the current year * * *." (Emphasis ours.)

It seems plain from these statutes that the tax maps in the county auditor's office must be corrected and kept up to date as to all transfer of property in the county. They must show in particular the parcel of land transferred and the name of the grantee to enable the county auditor to enter on the tax duplicate a **correct and proper description of each parcel of land transferred.** The county auditor then, in preparing the tax duplicate for the county treasurer, can fulfill his mandatory duty to compile a table listing the names of the owners of real estate in alphabetical order and placing separately, opposite each name, **the description of each parcel of real estate.**

The real estate here was transferred as one parcel of land. This was notice to the county auditor that the person owning it as such had the right to expect that the tax bills would cover the entire tract of land transferred because the two parcels now were united and inseparable in the description in the warranty deed. We believe that the description opposite the name of Veronica S. Akuszewski should have reflected this: that it was the duty of the county auditor to have noted such fact on the general tax list and the general tax duplicate. The county treasurer, then, would have had this information on his tax duplicate and the tax bill sent the plaintiff unquestionably would have carried the full tax on the land.

The plaintiff on the other hand did all to be expected of a taxpayer by notifying the county treasurer of the transfer and promptly paying the taxes listed in the bills sent her semi-annually. She had every right to assume that the bills sent her included all the taxes owed by her to the county on the property involved and there seems to be no question but that she acted in the utmost good faith and in the honest belief that the taxes on her property had been paid in full from August 15, 1946, when she acquired the property, through July 16, 1952, when parcel No. 136-8-10 was sold.

Where a taxpayer, pursuant to the recording of a warranty deed transferring property to him described as one parcel of land, notifies the county treasurer of the transfer of such property to him, receives a tax bill semi-annually which he promptly pays and which he, in good faith, believes covers all the real estate taxes assessed against his property, he has taken all the necessary steps required of him to pay the taxes on his property and if the county treasurer, because of the improper listing on the general tax duplicate furnished him by the county auditor, fails to include in the bills sent the taxpayer taxes on a portion of the land described in such deed, the unpaid taxes under the circumstances are deemed to have been paid and a forfeiture sale of that portion of the property for delinquent taxes is without authority of law and void.

Equity for purposes of justice looks upon that as done which ought to have been done.

134 A. L. R. states the rule on page 1300:

"According to the weight of authority, a delinquent taxpayer may

be relieved from his failure to redeem his property within the required time if such failure was caused by misinformation or incomplete information received from a public official whose duty it was to have given him full and correct information as to the unpaid taxes or tax sales affecting such property, at least where the taxpayer relies upon such misinformation in good faith and is not chargeable with notice of its falsity."

There do not seem to be any Ohio cases at point. The Supreme Courts of other states, however, have had the question presented to them. The defendants claim they are not applicable for the reason that the tax laws are different. The underlying principle involved in them is what we consider applicable to the instant case.

The Supreme Court of Arkansas in Schuman v. Person, 216 Ark., 732, 227 S. W. (2d), 160, said as follows in a case factually quite similar to the one here under consideration.

"1. TAXATION—SALE. An attempt of the landowner to pay his taxes made in good faith and frustrated by the mistake or negligence of the collector renders the subsequent sale of the land for the nonpayment of taxes void.

"2. TAXATION—MISTAKE OF COLLECTOR. Where appellee owning lots 15 and 16 in a named addition to the City of Little Rock appeared at the collector's office in 1946 to pay the taxes thereon for 1945, but the collector receipted her for the taxes on lot 15 only, the finding of the chancellor that appellee made a BONA FIDE effort to pay the taxes on both lots and was frustrated by the mistake of the collector was not against the preponderance of the evidence."

In Breisch v. Coxe, 81 Pa., 336, paragraph 8 of the syllabus states:

"8. A bona fide attempt to pay all the taxes, frustrated by the fault of the Treasurer, stands as equivalent to actual payment."

The Supreme Court of Michigan in Kneeland v. Wood, 117 Mich., 174, 75 N. W., 461, on page 176 states:

"It is held in numerous cases that if a landowner in good faith applies to the proper officer for the purpose of paying his taxes, and is prevented by the mistake, wrong, or fault of the officer, such attempt to pay is equivalent to payment."

The Court of Appeals of New York in Cooper v. Registrar, 114 N. Y., 19, 20 N. E., 611, stated:

"It seems where a taxpayer calls upon a proper officer for a statement of all the taxes due from him, receives the statement and pays all of the taxes included therein, and afterwards the land is sold for nonpayment of taxes in arrears at the time the statement was furnished, but which were omitted from it by the negligence of the officer or his clerk, the title of the taxpayer is not divested by the sale."

The Supreme Court of Wisconsin in Bray & Choate Land Company v. Newman, 92 Wisc., 271, 65 N. W., 494, stated in paragraph 1 of the syllabus:

"1. Where the owner of land applied in good faith to the town treasurer to pay the taxes thereon, and received a statement, and paid accordingly, and afterwards the land was sold for taxes which were

in arrears when such statement was furnished but were not included therein by the negligence, fault or mistake of the treasurer, and of which the owner had no knowledge, the title of such owner is not divested by the sale or barred by the three-year statute of limitations."

See Hayward v. O'Connor, 145 Mich., 52; Gould v. Sullivan, 84 Wisc., 659; Guthrie v. Haun, 76 Pac. (2d), 292, Hough v. Auditor General, 116 Mich., 663; Palmer v. State, 304 Mich., 628; Wooten v. White, 125 N. Car., 403; Wallace v. McEchron, 176 N. Y., 424; State v. George, 58 Wash., 679; Pottsville Lumber Co. v. Wells, 157 Pa., 5.

The defendant contends that §323.13 R. C., which requires that the treasurer send out tax bills and then reads: "failure to receive any bill required by this section does not excuse failure or delay to pay any taxes, special assessments, or other charges shown on such bill or avoid any penalty, interest, or charge for such delay." is controlling in this case and requires a determination that the plaintiff is not excused from paying her full tax bill. We feel that the statute is not pertinent to the facts in the instant case for the reason that the plaintiff here in good faith did all that could reasonably be expected of a taxpayer. Her predicament resulted from the fault of the defendants not tabulating properly the transfer of her property and supplying her with erroneous information of taxes due, upon which information she had a right to rely.

Smith v. Davidson, 23 Idaho, 555; 130 P. 1071, paragraph 1 of the syllabus states:

"1. Where a person offers to pay the taxes on his land and is informed by the proper officer that there is no tax to be paid on such land, and he relies upon such statement in good faith, a subsequent tax deed based on such tax will not pass title."

The majority of this court accordingly hold that the forfeited land sale for delinquent taxes of parcel No. 138-8-10, under the facts and applicable law, was void and did not pass title to the purchaser and that consequently the same should be and herewith is vacated and set aside and the plaintiff restored to her full right and title to the real estate therein involved.

Decree for Plaintiff. Exceptions. Order see Journal.

HURD, J, concurs.
SKEEL, J, dissents.

## DISSENTING OPINION

By SKEEL, J.

This appeal on questions of law and fact seeks to vacate a delinquent tax sale of plaintiff's property. The case was tried in this Court on an agreed statement of facts.

On August 14, 1946, the plaintiff, then known as Veronica S. Akuszewski, became the owner of certain real estate through a property settlement agreement with her husband in an action in which a decree of divorce was entered. The property consists of two parcels, one facing on Harvard Avenue, bearing permanent parcel No. 136-8-16, and the other facing on Cassius Avenue, bearing permanent parcel No. 136-8-10

on the records of the County Auditor of Cuyahoga County, the rear lines of each parcel, except for the difference in width of the respective parcels, being the same.

The deed from the plaintiff's husband described both parcels as one by metes and bounds. The Harvard Avenue parcel is improved with a residence which plaintiff occupies as her home and is known as 9607 Harvard Avenue. The backyard of this residence extends from the rear of the residence to Cassius Avenue, which includes all of Parcel No. 136-8-10.

When the deed to plaintiff was filed for record, the Auditor noted the change of title as to both parcels, and, as set forth in the agreed facts, "she (the plaintiff) notified the county treasurer of the fact. Her name was then Akuszewski. Thereafter she received semi-annually in the mail a bill for her real estate taxes. Each of such real estate tax bills was promptly paid by the plaintiff when due and none of said real estate tax bills was at any time delinquent." The agreement of facts then provides that the tax bills received were for the Harvard Avenue parcel listed by the Auditor as permanent parcel No. 136-8-16 and that no tax bills were received or paid for parcel No. 138-8-10 on the Auditor's Duplicate. The plaintiff's husband, before the divorce, paid the taxes on both parcels without default. Thereafter, the taxes became delinquent for the reasons stated, on parcel No. 138-8-10, whereupon this lot was forfeited to the state in the manner provided by law and in like manner thereafter sold at forfeited land sale.

It is the claim of the plaintiff that the fact that there were two parcels of land included in her deed as carried on the public records of land in Cuyahoga County was not known to her and that the Treasurer of Cuyahoga County, in sending a tax bill for the lot facing on Harvard Avenue, and not including the tax bill for the Cassius Avenue lot, after she advised the Treasurer that she was the owner of the property, was misleading to her and led her into believing she owed only the taxes represented by the bill she received and that the Treasurer of Cuyahoga County, is now estopped from claiming that the taxes on the Cassius Avenue frontage were not paid.

The legal theory of plaintiff's case is estoppel. Estoppel is defined in Black's Law Dictionary as follows:

"A bar or impediment raised by the law, which precludes a man from alleging or from denying a certain fact or state of facts, in consequence of his previous allegation or denial or conduct or admission, or in consequence of a final adjudication of the matter in a court of law."

Equitable estoppel is defined in the same work as:

"* * * estoppel which equity puts upon a person who has made a false representation or a concealment of material facts, with knowledge of the facts, to a party ignorant of the truth of the matter with the intention that the other pary should act upon it, and with the result that such party is actually induced to act upon it to his damage."

The stipulated facts do not bring this action within the elements of either estoppel or equitable estoppel as thus defined. The stipulations of fact show that the property faces on two residence streets in the

City of Cleveland with the back line of each lot abutting the other for the width of (40 feet) the lot facing on Cassius Avenue. These two parcels or lots had separate parcel numbers on the maps and permanent card records of real property in Cuyahoga County as recorded on the official records in the Auditor's Office. There is no claim that the parcel numbers on these lots were incorrect or not properly kept. The plaintiff's husband had experienced no trouble in paying the taxes on both lots and had done so prior to the transfer of the property of the plaintiff in 1946. The plaintiff's husband made out the deed for the two lots by a metes and bounds description which the plaintiff accepted and caused to be recorded. Neither the County Treasurer nor the Auditor directed this manner of transferring the property. The stipulations of fact then provided above quoted:

"When the plaintiff acquired title to the premises under the aforesaid warranty deed, she notified the County Treasurer of the fact. * * * Thereafter she received semi-annually in the mail a bill for her real estate taxes."

It is also stipulated that she lived in the house on the Harvard Avenue parcel, known as 9607 Harvard Avenue. There is no stipulation that the County Treasurer was requested to mail any or all of plaintiff's tax bills or that a description of the parcels intended was given nor is there a stipulation that any request was made to have the two parcels deeded to the plaintiff put under a single permanent number so that only one tax bill would be made out. A property owner owes the duty and must be charged with the responsibility of doing the things necessary to preserve his interest in property. Paying taxes is one of these duties and unless the owner of property is directly misled by an affirmative act of a public official, which act the official is charged by law to perform, a property owner cannot seek relief from his own failure to protect his own interests. The doctrine of estoppel can have no application where loss results from the failure of the owner to carry out his legal duty and such failure is not induced by the wrongful acts of a county official.

The last paragraph of §323.13 R. C., authorizing the mailing of tax bills, provides:

"Failure to receive any bill required by this section does not excuse failure or delay to pay any taxes, special assessments or other charges shown on such bill or avoid any penalty, interest or charge for such delay."

It is not to be denied that a County Auditor may be estopped from enforcing a tax lien by his conduct or that of the Treasurer because of error in keeping the public records. The case of Cleveland Trust v. Boyle, 55 Oh Ap 54, cited by the plaintiff, is a case in point. In this case the Treasurer's Duplicate showed the taxes had been paid when in fact they were unpaid. The right of the treasurer to assert a lien for the taxes carried as paid on the tax duplicate, which in fact were not paid, as senior to the rights of a mortgagee, relying on such record, was denied by the application of the doctrine of estoppel. There can be no doubt about the authority of this case being sustained by the great

weight of authority. But the facts in the instant case do not bring it within the rule. The public records here are correct. Neither the Treasurer nor the Auditor have done anything to mislead the plaintiff. The act which underlies the plaintiff's unfortunate position is that she accepted a deed which included two parcels of real estate without requesting that the permanent parcel numbers be changed or demanding tax bills for the property identified by such permanent numbers as her husband had done prior thereto. The judgment of this Court should be the same as in the trial court, that is, decree for defendants.