# LEWIS *v.* MONSON.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI.

No. 385. Submitted January 22, 1894. — Decided February 5, 1894.

The Federal courts universally follow the rulings of the state courts in matters of local law, arising under tax laws, unless it is claimed that some right, protected by the Federal Constitution, has been invaded.

When a person acquires tracts of land in Mississippi, designated by numbers upon an official map, which tracts are from year to year assessed according to those numbers, and the taxes paid as assessed, and a new official map is filed without his knowledge, with different divisions and a different numeration, he is not bound as matter of law to take notice of the new map; and if, after its filing, he pays his taxes under a mistake, intending in good faith to pay all his taxes, but fails to pay on a tract by

reason of the changes in the map, and such tract is sold for non-payment of the tax, he remaining in possession, his title will prevail in an action by the purchaser to recover possession of it.

THIS was an action brought by the plaintiff in error, plaintiff below, against David D. Withers to recover possession of a tract of land containing 80 acres, and described as follows: Lots 5 and 6, of section 22, township 3, range 5 west, Wilkinson County, Mississippi. A jury was waived and the case tried by the court. Findings of fact were made and a judgment entered thereon in favor of the defendant, which judgment was brought before this court by writ of error. Since the record was filed in this court, the defendant Withers has died, and the suit been revived in the name of his executor. The facts are these: Plaintiff's title was based on a tax deed, and the single question in the case is as to the sufficiency of that deed, for the defendant was in possession by his tenants, and, as is not disputed, held prior thereto the fee simple title. The tax deed was for the delinquent taxes of the year 1887, which amounted to $4.84, while the land was of the value of $6000. At the time of the entry and patent of these lands in 1833 and 1835 they were included in lots 3 and 4, of section 22, and the whole section, as shown by the tract book of original entries, was subdivided into four lots: Lot 1 containing 88 acres; lot 2, 62 acres; lot 3, 80 acres, and lot 4, 120 acres. And such was the description in all the defendant's muniments of title. In 1884 an act passed the legislature authorizing the board of supervisors to purchase a new and complete set of maps of the several townships of the county. In pursuance of this law and soon after its passage new maps were purchased and deposited in the chancery clerk's office. On the map of this township, section 22 was subdivided into six lots: Lot 1, containing 88 acres; lot 2, 62 acres; lot 3, 40 acres; lot 4, 80 acres; lot 5, 40 acres; and lot 6, 40 acres. The findings do not show the form of the assessment prior to 1875, but in that year, under a special act of the legislature, it was assessed to the defendant as section 22, containing 350 acres. In 1879 it was assessed to him as lots 2, 3, and 4, section 22, etc., containing 262 acres. In 1883, in the same way,

except that the number of acres was stated at 260. In 1887, for the first time, the section was assessed as follows : Lot 1, 88 acres, to S. A. Fetters, agent; lots 2, 3, and 4, 182 acres, to ͺD. D. Withers ; and lots 5 and 6, 80 acres, to " Unknown." The pencil memorandum of defendant's lands sent by his agent to the assessor as a return of assessment was not in the form required by the assessment laws of Mississippi, but was accepted as sufficient by the assessor. That memorandum describes the land as lots 2, 3, and 4, and as containing, respectively, 62, 80, and 120 acres. Without the knowledge. of defendant or his agents, the assessor, in making up the assessment roll, changed the description to conform to that in the new map. On the roll, as finally prepared, lots 2, 3, and 4 appear as valued at $9 per acre, and lots 5 and 6 at $1 per acre.

The minutes of the board show no order changing the assessment of D. D. Withers, or the acreage of lots 2, 3, and 4, and none in regard to the said lands, or lots 5 and 6 of said section, other than the general one receiving and approving the assessment roll of 1887, which describes lots 2, 3, and 4 as containing 182 acres, and lots 5 and 6, 80 acres.

The defendant had no notice of the new subdivision of the section into six lots, or of the procuring of new maps by the board of supervisors, or of the change in the form of description from that previously used in all deeds, in assessments, and in the memorandum of return made by his agent.

In reference to the payment of taxes the court found as follows :

" The defendant's agent and attorney went to the county site of Wilkinson County to pay defendant's taxes, because, upon a statement to defendant by the collector, the amount was much less than in former years and the acreage of his land largely reduced, and for the purpose of clearing up and adjusting the whole matter. He discovered lands of defendant not included in the list furnished to the assessor by Swan, the defendant's agent, and paid on them. He applied to the collector then engaged in attendance on the chancery court, who informed him that he did not think he had paid on all of defendant's lands, and introduced him to a Mr. Miller, his

deputy, there in his office, as one more familiar with the lands in the county than any one else, and requested defendant's agent to make himself at home and use Miller until he got everything straight. In comparing the tax receipts of previous years with the tax receipt then in his possession, said agent noticed the discrepancy in the acreage of lots 2, 3, and 4, and called Miller's attention to it. Miller said he would see about it, stepped to the corner of the room and got the township maps, footed up the acreage of lots 2, 3, and 4, and found it 182 acres. Defendant's agent asked him how he accounted for the acreage, and he replied, Withers had been paying for years on land in the Mississippi River, but added, referring to the maps, these are the latest surveys and are, I suppose, correct.

"Defendant's agent then looked at the map and saw lots 5 and 6 thereon, and asked, Who do lots 5 and 6 belong to? Miller replied, I don't think they belong to Withers. Said agent replied, they are very close to Withers' land, and Miller answered, he did not think they were ever assessed to Withers, and did not know whether they belonged to him or not. Said agent was doubtful about it; went back; made a thorough examination of Withers' muniments of title to see if lots 5 and 6 belonged to him. It was the first time he had ever heard of said lots 5 and 6, and he had no knowledge of the discrepancy nor of the map beyond the fact that said Miller told him it was the latest survey of the particular tract. When he saw a survey of lots 5 and 6, and could find no such lots in defendant's muniments of title, he concluded the land did not belong to Withers, but that they were water lots that belonged to no one, and that there was no land there. Said agent was then and there ready and willing to pay the taxes on lots 5 and 6, but he did not tender the money for the taxes and demand a tax receipt as prescribed by law, because he did not think the lands belonged to Withers. He first ascertained his mistake when this suit was brought."

In addition, it may be noticed that the list of lands furnished by the defendant's agent contained over thirty tracts, aggregating several thousand acres.

LEWIS *v.* MONSON. 549

*Mr. W. L. Nugent* for plaintiff in error.

*Mr. Thomas J. Carson, Mr. S. S. Calhoon,* and *Mr. Marcellus Green* for defendant in error.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

No question is more clearly a matter of local law than one arising under the tax laws. Tax proceedings are carried on by the State for the purpose of collecting its revenue, and the various steps which shall be taken in such proceedings, the force and effect to be given to any act of the taxing officers, the results to follow the non-payment of taxes, and the form and efficacy of the tax deed, are all subjects which the State has power to prescribe, and peculiarly and vitally affecting its well-being. The determination of any questions affecting them is a matter primarily belonging to the courts of the State, and the national tribunals universally follow their rulings except in cases where it is claimed that some right protected by the Federal Constitution has been invaded.

Turning to the decisions of the Supreme Court of Mississippi, we find in *Richter* v. *Beaumont,* 67 Mississippi, 285, 286, a case almost precisely like the one at bar. It is true that the question there presented arose upon the admissibility of testimony, but the views expressed by the court in its opinion, if accepted as controlling, as they must be, are decisive of this case. In that case there was an old and a new map; an old and a new description. The owner in possession paid according to the old, and in ignorance of the new, intending to pay on all the land that he owned. But by the new map and description the number of lots in the section had been increased, and the tract described by the added number was sold for non-payment of taxes. The lot thus numbered and sold was a part of the land belonging to him, and upon which he was intending and attempting to pay all the taxes. The court, by Mr. Justice Campbell, thus disposes of the question: "By the ancient division of the town and designation of lots, lot six embraced the parcel of land sued for in this action, which

parcel is, by the modern map, a part of lot seven. The defendant (appellant) was in 1883, and prior and subsequent thereto, in the actual possession of lot six, and he gave the description of his land to the assessor as lot six, and it was so assessed, he intending and understanding that lot six extended eastward according to the ancient order, so as to include what, by the new map, is part of lot seven. He paid the taxes on lot six, and lot seven, not being paid on, was sold for taxes. It does not appear that the appellant had ever done anything in recognition of the new map, or that he knew that the new map was conformed to by the assessor in assessing lots in Woodville. It may be inferred from the fact of his residence in the town, and the recognition by citizens and officials of the new map, that he was aware of it, and that the assessor was governed by it in assessing. If so, he should not be allowed to defeat the assessment and sale by his secret understanding or purpose. A mental reservation of the owner cannot be permitted to defeat assessment. On the other hand, if, until a recent date, lot six was understood to embrace what, by a new map, is part of lot seven, and the owner and occupant was governed by the former description in giving it in to the assessor, and did not know, and should not have known, that the assessor would deal with it as designated by the new map, he should not lose his land."

Little need be added to this extract from the opinion in that case. The suggestion there made of a mental reservation is out of this case by the finding of the court. That the owner was not bound, as matter of law, to take notice of the new map is shown by that decision, and if he was not bound to know, and did not in fact know, and paid under a mistake, relying upon the ancient descriptions and the old map, and intended in good faith to pay all his taxes, then clearly, within the scope of that decision, the sale was invalid, and the deed fails. Upon the authority of that case the judgment of the court below is

*Affirmed.*