HEADLEY et al. v. HALL et al.

No. 30570. Oct. 13, 1942.

*129 P. 2d 1018.*

R. R. Linker and F. E. Riddle, both of Tulsa, for plaintiffs in error.

A. C. Elliott, of Tulsa, for defendants in error.

DAVISON, J. This action involves the validity of two resale tax deeds. The deeds were declared invalid by the district court of Tulsa county.

The basis of the trial court's decision was that the property owners had in good faith made a reasonably adequate effort to pay their taxes to the proper official, and that through oversight or neglect on the part of the officers charged with the duty of selling land for taxes the property had been sold without notice to the property owners of the failure of their attempt to pay.

The decision of the trial court was correct upon authority of Grimes v. Carter, 185 Okla. 469, 94 P. 2d 544, and the authorities therein reviewed, as supplemented by other authorities hereinafter mentioned in this opinion.

The following situation is presented in the case at bar: Senate Bill No. 285, as enacted by the Legislature in 1937, art. 14, ch. 66, S. L. 1937, made provision for reduction by the board of county commissioners of assessments for taxes previously imposed upon property. The act, according to its provisions, became effective on May 3, 1937.

John Hall and Launia Hall, husband and wife, were then, as now, the owners of the property herein involved, which consisted of platted property within the city limits of Sand Springs, Okla.

In April of 1938 the county treasurer of Tulsa county advertised this and other property belonging to the plaintiffs for sale at the 1938 tax resale to satisfy past due and delinquent taxes assessed against the same. The plaintiffs learned about the advertisement and thereupon sought a reduction of the assessed valuation of their property for prior years under the provisions of the 1937 legislative act above referred to. They presented a verified application to the board of county commissioners for that purpose. The board approved a reduction in valuation. The county treasurer of Tulsa county computed the amount of tax payable by the plaintiffs on the valuation as reduced. Plaintiffs gave the county treasurer two checks, one for $50.69 to cover the taxes computed to be due on the property herein involved, the other to pay the sums charged against the other property. The deputy county treasurer who handled the transaction did not then issue a receipt but filled out a "check stub" on each of the checks and gave them to the plaintiff "in lieu of a receipt" the making of which was delayed on account of the rush of business. The receipts were to be mailed to plaintiff later, possibly after the checks had been cashed. The county treasurer then withdrew all of the property from the 1938 tax resale.

Both of the checks above referred to were on the same bank. Both would have been paid if and when presented. The check drawn to satisfy the taxes on the other property was presented and paid. The check connected with the property here involved was not then presented. Subsequently, plaintiff John Hall inquired at the bank and learned the checks had not been presented. He then inquired of the treasurer's office about the receipt, where he was told it "would be around later." The matter then "slipped from plaintiff's mind," and further inquiry was not made. The check was lost and never presented to the bank for payment. The plaintiffs were not notified of its loss.

In the 1940 tax resale this property was included and purportedly sold, part to Vernon Headley and part to W. L. Wall and part to H. L. Wall, each of whom secured separate tax deeds to the respective tracts bought by them.

On August 26, 1940, this action was instituted by plaintiffs against the resale tax deed holders and the county treasurer of Tulsa county. No question is herein presented concerning the joinder of parties defendant or the joinder of causes of action. The trial court, upon hearing the cause, held for the plaintiffs but required that plaintiffs' tender of past due and delinquent taxes be made good as a condition to the relief. Subsequently an order was entered making distribution of the amount tendered.

Meanwhile, on July 26, 1938, this court declared article 14, ch. 66, S. L. 1937, unconstitutional. Ivester v. State ex rel. Gillum, Co. Atty., et al., 183 Okla. 519, 83 P. 2d 193. Our decision became final in October of the same year. Our decision was promulgated and became final after the plaintiffs, the board of county commissioners, and the county treasurer of Tulsa county had acted under the statute in connection with this property. Later the 1941 session of the Legislature repealed the act. 1941 S. L. pg. 482.

When a property owner pays and satisfies all of the taxes levied and assessed against his property, there can be no doubt that the officers empowered to sell property for delinquent taxes cannot thereafter conduct a valid tax sale, but it is apparent that a somewhat different question is presented where the property owner makes a timely but unsuccessful attempt to pay all of the taxes. However, the courts generally recognize that statutes providing for the sale of property to satisfy delinquent taxes are not designed for the purpose of unjustly depriving people of their property. Thus, where a property owner in good faith undertakes to pay all of his taxes and makes proper and adequate inquiry of the proper officials to learn the amount of his tax burden and satisfies the burden which he is informed exists, but which through

error does not constitute the entire burden, a subsequent attempt on the part of the officials to convey the property at tax sale without previous notice to the property owner is generally judicially declared to be abortive. Thus, in Grimes v. Carter, supra, a taxpayer paid in full the amount of delinquent taxes against his property according to his information from the county treasurer, who also informed him there were no other taxes. The property was subsequently sold for the taxes which were delinquent at the time of the payment but were not paid. A subsequent sale of the property was held invalid. A number of authorities supporting our holding were therein reviewed. In addition to those authorities we deem it appropriate to call attention to the Idaho case of Smith v. Davidson, 23 Idaho, 555, 130 P. 1071, which contains the following able analysis of the question:

"The law is well settled that where a party is ready and willing to pay taxes upon any property, and is informed by the person authorized by law to collect the tax that no taxes are due on the particular property, a valid sale cannot be made. The case of Tacey v. Irwin, 18 Wall. 549, 21 L. Ed. 786, involved the sale of property attempted to be made by a tax commissioner of the United States. It appears that the commissioner under the act in question had laid down a ruling that no payment of taxes could be made before sale by any person except the owner and could not be made by an agent. The agent of the absent owner called upon the tax collector to pay the taxes, and was informed that the owner must pay them himself. The court held that the tax commissioner had no authority to make that ruling. After the premises were advertised for sale, the agent of the owner called about the payment of taxes, but made no formal offer to pay them because it was in effect waived by the commissioner's order. The court held that it was difficult to see how under that state of facts the case could be sustained as the law does not recognize the doing of a futile act, as would have been the tender of payment after the commissioner had declined to receive the tax.

"In the case of Hoffman v. Auditor General, 136 Mich. 689, 100 N. W. 180, the court quotes with approval from Kneeland v. Wood, 117 Mich. 176, 75 N. W. 462, as follows: 'It is held in numerous cases that if a landowner in good faith applies to the proper officer for the purpose of paying his taxes, and is prevented by the mistake, wrong, or fault of the officer, such attempt to pay is equivalent to payment.' In Hayward v. O'Connor, 145 Mich. 52, 108 N. W. 366, the court held that it was equivalent to a payment of other taxes, if any, where a county treasurer at the time an owner paid his state and county taxes against his land assured the owner that there was no other tax against the land. In Nelson v. Churchill, 117 Wis. 10, 93 N. W. 799, it is held that where a person makes an offer to the proper person to pay the taxes on his land for a particular year, and is informed that there is no tax to be paid, and relies thereon in good faith, a subsequent tax deed based on such tax will not pass title. In Breisch v. Coxe, 81 Pa. 336, it is said: 'A bona fide attempt to pay all the taxes, frustrated by the fault of the treasurer, stands as the equivalent of actual payment.' In Pottsville Lumber Co. v. Wells, 157 Pa. 5, 27 Atl. 408, it is held that a landowner who goes to the treasurer's office to pay all overdue taxes and thus prevent a sale of his land, and he explains his business to the treasurer, and pays all taxes demanded of him, has the right to rely on the treasurer's statement, and need not search the tax books for further taxes charged against his land. In the case at bar the respondent had a right to rely upon the tax collector's statement. The law and equities under the facts of this case are all with the respondent."

In Lewis v. Monson, 151 U. S. 545, 14 S. Ct. 424, 38 L. Ed. 265, the holding of the Supreme Court of the United States was:

"Where the owner of lands intended in good faith to pay all the taxes on them, but made a mistake, relying on the old descriptions and map, not knowing that a new map had been followed in making the assessment, and thereby omitted to pay the taxes on part of his lands, a sale of such lands for the taxes and the tax deed are invalid."

Similarly, authorities on the same

point and to the same effect are Taylor v. Debritz, 48 Wash. 373, 93 P. 528; Bullock v. Wallace, 47 Wash. 690, 92 P. 675; Moon v. March, 40 Kan. 58, 19 P. 334; see, also, annotation 134 A. L. R. 1299.

It is thus apparent that, according to the great weight of authority, where the nonpayment of delinquent taxes is due to misinformation given by a tax collector upon inquiry by the property owner, the property owner will be protected, and any tax deed thereafter issued against his property so long as he remains in ignorance of the existing delinquency will be treated as subject to cancellation on equitable considerations.

The defendants contend in substance, however, that the foregoing considerations do not govern this case because the taxpaying authorities were in this case acting under an unconstitutional statute. Upon this point they invoke our holding in State v. Board of County Commissioners of Creek County, 188 Okla. 184, 107 P. 2d 542. They point to our declaration in that case that, generally speaking, an unconstitutional statute confers no rights, affords no protection, and justifies no acts performed under it. Certainly, as we therein held, the unconstitutional law did not render the reduction in assessment valid and the plaintiffs are still bound to pay the full amount of their assessment as it stood before the attempted reduction under the invalid law. The judgment provides for such payment and it appears that the plaintiffs have placed the money for such purpose in the hands of the court clerk. Neither should an unconstitutional law in its practical operation have the effect of confiscating property. As we noted in the last-cited case, the administrative officers are excused from penalty for having acted under the law. We said:

"Defendants also contend that parties acting in good faith under a law thereafter declared unconstitutional will be held harmless from penalty and injury, citing Wade v. Harmon County Com'rs, 161 Okla. 245, 17 P. 2d 690, Gordon v. Conner, 183 Okla. 82, 80 P. 2d 322, 118

A. L. R. 783, and other similar cases. In those cases it was held that administrative officers will not be penalized for acts done by them in administering a law thereafter declared unconstitutional, for the reason that they are required to administer such law and lack the power to determine its validity or invalidity. . . . "

Thus we judicially excuse administrative officers from penalties for acting under an unconstitutional law. We may also excuse them for erroneous information or erroneous calculation made under and by reason of such an act. But the fact that we excuse the officers does not require that we shift the blame and impose a penalty on the taxpayer with whom they deal. The fact remains that the information which the taxpayer receives from the tax collector as to the amount of taxes due is erroneous, and if in good faith he acts on that information, he is entitled to the same protection as a taxpayer who is similarly misinformed for some other reason or for no reason at all.

In other words, the law places on the taxpayer the burden of making appropriate inquiry of the proper officials to ascertain the extent of the tax burden on his property. If he makes that inquiry, receives a complete answer, and acts accordingly, he relieves himself of the hazard of losing his property by tax sale so long as he remains in ignorance of another or greater burden which existed at the time of the inquiry. However, as we held in State ex rel. Tharel v. Board of County Com'rs of Creek County, supra, his property is not thereby relieved from the greater burden.

We cannot consistently place upon each tax-paying citizen the burden of errors committed under unconstitutional laws not yet judicially declared to be unconstitutional while excusing administrative officers from penalties which would otherwise attach to acts committed by reason of such laws. This does not mean that we will approve any advantage obtained under such acts.

There is nothing in this case to re-

move it from the rule of Grimes v. Carter, supra. The trial court so held, and its decision is affirmed.

OSBORN, BAYLESS, GIBSON, and ARNOLD, JJ., concur. WELCH, C. J., and HURST, J., dissent. CORN, V. C. J., and RILEY, J., absent.