McKINNEY v. FARROW et ux.

No. 31472. Oct. 10, 1944.

152 P. 2d 265.

J. W. Dixon, of Marietta, and Twyford & Smith, of Oklahoma City, for plaintiff in error.

C. C. Wilkins, of Marietta, for defendants in error.

RILEY, J. This action involves the validity of a resale tax deed conveying 80 acres of land in Love county to plaintiff, K. L. McKinney. The land was first sold for the 1937 delinquent taxes, and as no one offered a bid, the treasurer bid off the land in name of the county.

The county treasurer's record shows the land unredeemed in 1941. It was advertised at resale, and sold to plaintiff, K. L. McKinney, on May 12, 1941. On the same day, the resale deed here involved was issued and filed for record May 13, 1941.

On May 21, 1941, plaintiff, K. L. McKinney, commenced this action, based upon the resale tax deed, against defendants in error, Dan Farrow and Addie Farrow and the Goodwin Wholesale Grocery Company, to quiet his title to the land involved. The Goodwin Wholesale Grocery Company does not appeal from the judgment rendered.

Defendants Dan and Addie Farrow were the record owners of the land. The resale tax deed is in due form. Plaintiff alleged that he was in possession of the land. Defendants Dan and Addie Farrow, by answer, alleged that on January 14, 1939, they paid the treasurer of Love county the sum of $25.73 and received receipt therefor; that in making said payment, defendants instructed the treasurer to apply said amount on payment of the 1937

taxes; that the treasurer inadvertently applied the money in payment of the 1938 taxes, leaving the 1937 taxes unpaid, all of which was unknown to defendants.

Defendants also assailed the validity of the resale tax deed upon the grounds that the sale of the land by the treasurer on May 12, 1941, was not held in the county treasurer's office as provided by law, but was held in the district court room of Love county.

Reply was by general denial.

Judgment was for defendants, and plaintiff appeals.

The contention is that the judgment is contrary to law, contrary to the undisputed evidence, and is not sustained by any evidence.

The record discloses that defendants purchased land about 1931. They paid all taxes down to and including the year 1936.

The resale was conducted in the district court room in the courthouse on floor above the office of the county treasurer, under circumstances almost identical with those existing in the resale involved in Meyer et al. v. Corn, 191 Okla. 537, 131 P. 2d 62, and the tax sale involved in Cherryhomes v. Board of County Commissioners of Tulsa county, 160 Okla. 159, 16 P. 2d 257.

In those cases, it is held that under the provision of 68 O. S. A. §383, requiring tax sales to be held at the office where by law the taxes are made payable:

". . . a sale is valid although held in the district court room on the floor above the space occupied by the county treasurer for his office, where the record shows that the district court room was made the office of the county treasurer for the time being for the purposes of the sale, where public announcement thereof was made, and where no person was deprived of an opportunity to bid at the sale by reason of the use of the district court room by county treasurer as a part of his office for the purpose of conducting the sale."

Under the record in this case, the sale was not invalid because held in the district court room.

Defendant Dan Farrow was employed in Texas about 1938 and 1939. Some time prior to November, 1938, he wrote the county treasurer a letter inquiring the amount of the 1937 taxes upon the land. The treasurer mailed him a statement of the 1937 taxes. Again on January 2, 1939, he wrote the county treasurer as follows:

"Webster, Texas
"Jan. 2, 1939

"Mrs. W. B. Looney
"County Treasurer
"Marietta, Okla.

"Mrs. Looney:

"Please send me the new statement on the land tax that is due November 15, 1938. This land is located near Thackerville, Okla., in section (7) seven township (9) nine east range (2) two.

"Send this statement at once I want to pay this.

Mr. Dan Farrow
"Webster, Texas."

Mrs. W. B. Looney, who was then county treasurer, testified that she received said letter and in response thereto made defendant Dan Farrow a statement of his taxes. She was not positive but thought she sent him only the statement of the 1938 taxes which were then due. Apparently the amount shown therein was $25.73.

Thereafter defendant Dan Farrow mailed to the county treasurer a check for $25.73. The county treasurer received said check and cashed same.

The check was introduced in evidence and at that time bore an endorsement "for 1937 taxes." But the defendant testified that said endorsement was not on the check when he mailed it to the county treasurer, that his tax receipt was burned in a fire and he placed that endorsement on the check after it had been paid and returned to him.

This left the 1937 taxes unpaid on the

records of the county treasurer, and the land was sold at the 1941 resale.

The trial court found:

". . . that said defendants, Dan Farrow, and Addie Farrow, acted in good faith in all of said transactions and did in good faith make a reasonable adequate effort to pay their taxes on said land to the County Treasurer of Love County, Oklahoma, and that through oversight or neglect on the part of said Treasurer the property was sold, without notice to said defendants, and said sale and tax deed issued to the plaintiff should be set aside, vacated and held for naught, as this Court cannot in good conscience unjustly deprive these defendants of their property upon the evidence and testimony introduced in this case."

Defendants cite and rely upon Headley v. Hall, 191 Okla. 352, 129 P. 2d 1018, and Grimes v. Carter, 185 Okla. 469, 94 P. 2d 544, to sustain the judgment of the trial court.

In the Headley Case, supra, we held:

"Where nonpayment of delinquent taxes is due to misinformation or miscalculation of tax collector, on inquiry by owner of realty, and owner acting in good faith under such misinformation or miscalculation does all that he is required to do to discharge his realty from the tax burden, any tax deed issued against the property so long as the owner remained in ignorance of another or greater tax burden will be treated as subject to cancellation on equitable consideration."

In Grimes v. Carter, supra, the resale tax deed was canceled upon the ground that the owner had paid to the county treasurer sufficient money to redeem the property from tax sale, and the county treasurer gave her a redemption certificate for only a part of the delinquent taxes, and returned part of the money to her, and informed her that she had redeemed her property and that there were no other outstanding taxes due on same.

These cases are based upon the rule stated in 61 C. J. p. 961:

"Thus where an owner of land, in good faith, applies to the proper officer, for the purpose of paying his taxes, and, by reason of the mistake or fault of the officer, is informed that there are no taxes against the land, or is furnished with a statement, certificate, or information as to the amount of the taxes which is incomplete or erroneous and, acting on such information he pays all that is demanded of him, there is in effect a payment of the taxes due, which will discharge the owner from liability and defeat a subsequent sale for nonpayment."

The plaintiff contends that the facts in this case are not sufficient to bring it within the rules stated above, for the reason that the county treasurer did not misinform defendants in any manner, but simply gave the statement required.

But the defendant testified that in good faith he thought he was paying the 1937 taxes. In fact, he testified that he in good faith thought he paid all the taxes then due against his land. The county treasurer construed the letter of January 2, 1939, to be an inquiry as to the amount of new taxes on the land due November 15, 1938; he so testified. But the request was for a new statement of taxes on the land due November 15, 1938, with request that the statement be sent at once, and the further declaration "I want to pay this." Naturally, defendant would think the treasurer would send a statement of all the taxes due November 15, 1938.

It is true that Headley v. Hall, supra, and Grimes v. Carter, supra, are based upon alleged error or misinformation given by the county treasurer. But not every case requires error or fault of the county treasurer.

In Puget Sound National Bank v. Biswanger, 59 Wash. 134, 109 P. 327, it is said:

"It is not the policy of the law that the owner should lose his land through excusable mistake, and, while it may not be said that there was any negligence on the part of the treasurer in this case, the fact remains that an honest attempt had been made on the part of the owners to pay the taxes, and that the

mistake was one which the exercise of ordinary prudence would not detect."

The facts in this case are not exactly the same as the facts in Headley v. Hall, supra, nor as in Grimes v. Carter, supra, but the rules stated in these cases, with Puget Sound National Bank v. Biswanger, supra, support the judgment.

Affirmed.