## PONDER et al. v. EBEY.

### No. 31485. Oct. 10, 1944.

#### 152 P. 2d 268.

Sigler & Jackson, of Ardmore, for plaintiffs in error.

Wm. G. Davisson, of Ardmore, for defendant in error.

RILEY J. This is an action commenced by defendant in error, herein referred to as plaintiff, to cancel and set aside a resale tax deed, a county commissioners' deed based upon the resale tax deed, and a deed to a subsequent purchaser.

The facts are not in dispute and there is no conflict in the evidence.

The record shows that J. H. Dillard in his lifetime was the owner of lot 3 in block 53 in the city of Ardmore, Carter county, Okla. J. H. Dillard died about 1927. In the settlement of his estate, said lot 3, with other property, was conveyed to plaintiff, Harmon Ebey, as guardian and trustee of James Houston Dillard and Jerry Hamilton Dillard, minor children of J. H. Dillard, deceased. Plaintiff acquired title in said capacity June 6, 1939. All taxes had been paid on said property for the year 1935 and prior years. Plaintiff lived at Ada, Okla. After acquiring title to said property, and about October 10, 1939, plaintiff made written request to Roy Holliman, the county treasurer of Carter county, for a statement of all taxes that might be due and unpaid on said property and particularly lots 3 and 4 in block 53 in the city of Ardmore. In response thereto, the treasurer furnished plaintiff a statement showing the amount of taxes due on said lot for the years 1936, 1938, and 1939, and that

there were no taxes due on said lots, or either of them, for the year 1937. The total amount shown as against said lots 3 and 4 was $201.96. Apparently, there was some further inquiry, not shown in the record, as to whether there were any taxes due for the year 1937. Plaintiff mailed a check to the county treasurer for said sum of $201.96. The county treasurer returned said check to plaintiff, with a statement that the amount was not correct and that the correct amount then due was $225.67. Thereupon plaintiff mailed a check to the county treasurer for the $225.67 together with a letter as follows:

"November 2nd, 1939
"Office of County Treasurer
"Carter County
"Ardmore, Oklahoma
"Gentlemen:    Attention: R. H. Williams

"In accordance with your letter addressed to me under date of October 31st I am enclosing you herewith my check No. 51 covering the taxes due on the above described property for the years 1936, 1937, 1938 and 1939 with penalties to date, in the amount of $225.67.

"Yours very truly,
"Harmon Ebey, Guardian and Trustee James H. Dillard and Jerry H. Dillard
"HE/dg"

The treasurer received and cashed that check and apparently issued tax receipts therefor. The tax receipts, if any were issued, are not in evidence, and the record does not disclose clearly to what property he applied the money or for what years' taxes.

November 6, 1940, plaintiff wrote the county treasurer as follows:

"Ada, Oklahoma (Tract #8)
"November 6th, 1940
"County Treasurer
"Ardmore, Oklahoma

"Re: All of Lots 3 & 4, in Blk 53 in Ardmore, Carter County, Oklahoma. Owner—Harmon Ebey, Trustee

"Dear Sir:
"I wish to pay the taxes for the year 1940 on the land as captioned. Please prepare a receipt and attach to draft drawn upon me as trustee in care of the First National Bank, Ada, Oklahoma, and the same will be paid when presented.

"According to my records, all the taxes for the years 1936, 1937, 1938, 1939 and all previous years are paid. Kindly advise me if your records show to the contrary.

"Thanking you, I am,
"Very truly yours,
"(Signed) Harmon Ebey
"Harmon Ebey, Trustee for James H. & Jerry H. Dillard."

The county treasurer noted on the letter the figures "61.58" and returned it to plaintiff and made no answer to the query concerning the 1936, 1937, 1938, and 1939 taxes. January 7, 1941, plaintiff mailed a check to the county treasurer for the sum of $386.20 with a statement thereon that it was in payment of 1940 taxes, as to tracts Nos. 5 to 11, inclusive. Tract No. 8 was shown thereon to be lots 3 and 4 in block 53 in the city of Ardmore and the amount to be applied on the 1940 taxes was noted as $61.58, same being the amount shown by the notation of the county treasurer on the letter of plaintiff dated November 6, 1940. The county treasurer received and cashed that check. It was marked: "Paid 1-20-41."

Lot No. 3 was included in the property advertised for resale in 1941. Wm. G. Davisson, counsel for plaintiff, noted that the lot was advertised for resale, and on April 23, 1941, wrote plaintiff advising him of that fact. April 25, 1941, plaintiff wrote Mr. Davisson a letter setting out at length what had been done in the matter, asserting therein that he thought all taxes on lot No. 3 had been paid, and then said: "I give you this information so that perhaps it will assist you in obtaining some consideration in the matter. In any event please pay the taxes on the property and have the treasurer attach receipts to draft drawn on me in care of the First National Bank of Ada." Mr. Davisson testified that he took that letter

and read it to the county treasurer and requested him to look into the matter and ascertain whether there were any unpaid taxes against said lot No. 3. With reference to what took place at that time, Mr. Davisson testified that the county treasurer told him that he was very busy and did not have time to check it up and ascertain whether or not the taxes had been paid, and further:

"I told him I had instructions to pay the taxes and wanted to pay them. He said he would check it up and that he would see whether or not it was paid. That if he found on checking it that it was not paid that he would draw a draft on Mr. Ebey through the First National Bank at Ada. I immediately notified Mr. Ebey to that effect and that I had offered to pay the taxes, that is if it was not paid and the treasurer, due to rush in his business, would check it up and that then the treasurer himself suggested that I leave him authority when he got time to check it up and to draw a draft if he found it was not paid. He stated that he would take this property from the resale list and that it would not be sold. Not desiring to leave that matter just on his statement as to whether or not anything had occurred, I went back to my office—this was on April 30th just before the May tax resale and I wrote Mr. Holliman this letter. This is a duplicate original of it and I took the original over and handed it to him in his office. 'April 30th, 1941, Mr. Roy Holliman, County Treasurer of Carter County, Ardmore, Oklahoma. Dear Sir: I have from Mr. Harmon Ebey of Ada, Oklahoma, who is guardian and trustee for the Dillard minors some extensive correspondence which passed between you and him with reference to the payment of the taxes on Lots 3 and 4 in Block 53 in the city of Ardmore. I now note that Lot 3 in Block 53 is included in the list of properties which is being advertised for tax resale. It is apparent from the correspondence which I have before me that Mr. Ebey thought that the tax on this lot was paid and that he remitted what he understood to be the necessary amount to pay the taxes on both lots 3 and 4. If you keep your correspondence I shall be very glad to have you go over it and after refreshing your memory then ascertain whether or not the remittance made by Mr. Ebey covers the tax on this particular lot. If for any reason it is not covered by the remittance made then please draw a sight draft on Mr. Harmon Ebey, c/o First National Bank, Ada, Oklahoma, and attach the receipt for the tax and I assure you that it will be paid promptly on presentation. On the other hand if you find after checking the matter that this tax has been paid then please correct your records accordingly.' I handed Mr. Holliman that original letter and he himself made the request of me that I leave the authority to draw if I found that the tax had not been paid after he had time to check the record. That is the reason this letter was written at that time and the original taken over and left with him. I did not know that this property was later sold by reason of the definite understanding that I had with him that it would be stricken and not offered for sale, the same as I had had on certain properties of my own, and I plead in this petition, that he had had me leave lists of my own property where he had not made up receipts at the time that he would strike them from the list and would draw drafts upon me, and had on previous occasions. In reliance on that I paid no further attention to the matter and I didn't know the property had been sold."

The county treasurer apparently did nothing further in the matter. The lot was sold to the county at the resale May 12, 1941, and deed was issued to the county. The record does not show for which year's or years' taxes the lot was sold to the county. The record does show the amount of taxes, interest, penalties, and costs for which the lot was sold to the county to be $74.18. Later the lot was sold by the county to defendant J. B. Ponder. County commissioners' deed was executed and delivered to him July 29, 1941. The consideration therefor was $66. August 10, 1941, defendant Ponder, by quitclaim deed, conveyed the lot to defendant J. N. Ledbetter, his brother-in-law. The consideration stated in the deed was $10 and other valuable consideration. Defendant Ledbetter testified that he paid $300 for the deed.

410

So far as the record shows, the proceedings, deeds, etc., were regular.

The findings of the trial court were general and for the plaintiff. The decree canceled the deeds, and defendants Ponder and Ledbetter appeal. Roy Holliman, county treasurer, the board of county commissioners, and J. C. Holder, chairman of the board, were made parties defendant but did not answer nor make any defense.

There are four assignments of error. It is first asserted that the court erred in overruling the demurrer to plaintiff's petition. No authorities are cited in support of this contention. The petition is sufficient to state a cause of action and there is no error in overruling the demurrer.

The principal contention is that the decree is not supported by sufficient evidence and is contrary to law.

Defendants cite and rely upon cases laying down the general rule that every person is charged under the law with notice and knowledge as to whether his taxes are paid and if they are not paid, he is charged with the knowledge that the land may be sold in the manner provided by law, and the owner is charged by law with notice of the time and place where such sales are required to be made. This is a fair statement of the general rule but it is also the rule in this state that the taxpayer has the burden of making appropriate inquiry of the proper official to ascertain the extent of the tax burden on his property, and after he makes that inquiry and receives a complete answer and acts accordingly, he relieves himself of the hazard of losing his property by tax sale so long as he remains in ignorance of another or greater burden which existed at the time of inquiry. Headley v. Hall, 191 Okla. 352, 129 P. 2d 1018; Grimes v. Carter, 185 Okla. 469, 94 P. 2d 544.

In Headley v. Hall, supra, it is said:

"Thus, where a property owner in good faith undertakes to pay all of his taxes and makes proper and adequate inquiry of the proper officials to learn the amount of his tax burden and satisfies the burden which he is informed exists, but which through error does not constitute the entire burden, a subsequent attempt on the part of the officials to convey the property at tax sale without previous notice to the property owner is generally judicially declared to be abortive."

The further general rule is that it is the duty of the proper officers to impart correct information to those seeking to redeem from tax sales and the owner does not lose his right to redeem by permitting the appointed time to elapse or paying less than the proper amount, or otherwise failing to comply with the directions of the statute when this was caused by the fraud or inability of the officer to furnish necessary information or by his mistake, negligence, or misinformation, or by misleading advice given by him. 61 C. J. 1290.

Aside from fraud, which is not charged nor indicated by the record, the facts shown by the record bring plaintiff's case squarely within the rule above stated. Not once, but thrice, plaintiff made specific inquiry as to the amount of any unpaid tax burden that might exist against his property, with the statement that he desired to pay all taxes due against the property. Finally, when the property was advertised for resale, plaintiff's attorney personally went to the county treasurer and requested him to ascertain whether or not the taxes on this property had been paid and informed the treasurer that he had instructions to pay any such taxes and wanted to pay them. The treasurer promised to check the records and see whether or not the taxes were paid. The attorney went further and delivered the treasurer written request to check the records and ascertain whether or not the taxes had been paid. The treasurer promised to check the record and if he found any unpaid taxes against the lot that he would draw a draft on plaintiff, and requested the attorney to leave with him authority for drawing such draft, which the attorney did. The treasurer

went further and promised the attorney that the property would be stricken from the resale. The county treasurer wholly failed to give plaintiff the information requested. The record shows unusual diligence on the part of plaintiff. Plaintiff was misinformed in the first place as to the amount of taxes against the lot and was never able to get the correct information from the county treasurer whose duty it was to furnish the same. It is clear that it was the fault of the county treasurer that the taxes in question were not paid before the resale of the property to the county. As we view the record, the facts in this case are far more favorable to plaintiff than were the facts in the case of Grimes v. Carter, supra, or the case of Headley v. Hall, supra.

Defendants assert that plaintiff made no sufficient tender of taxes, penalties, interest, and costs. In this connection, defendants cite the general rule as to the requirements and sufficiency of a plea of tender as between the ordinary debtor and creditor, where there must be an allegation of actual production of the specific amount of money and an offer of it to the creditor. That strict rule does not apply as to tender of taxes in an action to set aside a tax deed. Title 68 § 455, O.S. 1941, requires tender of all taxes, interest, penalties, costs, and expenses. Title 68 §453 requires tender in open court of all taxes, penalties, interest, and costs which the party seeking to redeem would be bound to pay if he was then redeeming the lot from tax sale. Plaintiff in his petition tendered and offered to pay into court the full amount of the unpaid taxes which was due and payable at the time of the purported resale, including all lawful penalties, if any, accrued thereon. This tender was renewed in open court at the trial and was sufficient. Taylor v. Trow et al., 191 Okla. 485, 131 P. 2d 79. Therein it is held:

"In action to set aside and cancel a resale tax deed issued to county, plaintiff's petition stating that he 'hereby tenders into court any and all taxes, interest, penalties and costs for which said lands may be legally liable, and offers to pay all such tax that the court may find to be due and payable' was a sufficient tender for purpose of commencing the action."

Plaintiff suggests that he was entitled and offered to redeem under the provisions of Title 68 §433 (a), O. S. 1941, relating to the right of infants, idiots, and insane persons to redeem their property from taxes within one year after removal of the disability.

Plaintiff's right to redeem generally is clearly shown by the record and we deem it unnecessary to discuss his rights to redeem under the statutes relating to the rights of infants.

The decree directs the county treasurer to accept from plaintiff payment of all taxes, penalties, costs, etc., but does not require payment by plaintiff. Plaintiff should be required to make his tender good and pay all taxes, interest, costs, and penalties accrued and unpaid against the lot in question.

The decree should be, and is hereby, modified so as to become effective only upon payment by plaintiff of all taxes, interest, costs, and penalties due and unpaid against the lot in question.

As so modified, the decree is affirmed.