DIEHM et al. v. CARVER.

No. 31335. April 17, 1945.

Rehearing Denied Sept. 11, 1945.

*163 P. 2d 997.*

Gilliland, Ogden, Withington, & Shirk, of Oklahoma City, for plaintiffs in error.

J. Cal Counts, of Oklahoma City, for defendant in error.

HURST, V.C.J. The question presented is whether the plaintiffs are entitled to equitable relief from the resale of a five-acre tract of land in Oklahoma county sold at the 1941 resale, under the rules stated in Grimes v. Carter, 185 Okla. 469, 94 P. 2d 544, Headley v. Hall, 191 Okla. 352, 129 P. 2d 1018, and Martin v. Bodovitz, 194 Okla. 614, 153 P. 2d 825.

The material facts presented by the record are as follows: The plaintiff, Henry F. Schwarze, was the former owner of the property, having purchased it in 1929 ·and taken title in the name of the plaintiff, Andrew Diehm, brother of Mrs. Schwarze. The taxes against the property for 1932 were ·paid by Schwarze on November 7, 1933, and those for 1934 were paid by Schwarze on December 14, 1934, and the receipts therefor were kept by Schwarze and introduced in evidence. On December 22, 1936, a Mr. Victor paid the taxes for 1933. The property was advertised for sale at the 1940 tax resale for the delinquent taxes for 1930, 1931, and 1935. The 1940 resale was concluded on August 16, 1940, and Schwarze gave the treasurer a check dated August 5, 1940, and indorsed by the treasurer on August 8, 1940, for $10.05 in payment of the taxes for 1931 and 1935, for which he was given the tax receipts for those years. Schwarze gave the treasurer a check dated August 9th and indorsed by the treasurer on August 10, 1940, for $2.74 in payment of the taxes for 1930, for which he was given the tax receipt, and it was introduced in evidence. The property was then removed from the 1940 tax resale. It is clear that the taxes for 1936 to 1940 were not paid, and the property was advertised and sold for those taxes at the 1941 resale. The decisive question is one of fact, and is whether, when Schwarze paid the taxes for 1930, 1931, and 1935, he was advised by·Walter J. Ross, deputy county treasurer, that those checks paid all the back taxes against the property and whether Schwarze in good faith relied upon such statement and was thereby misled by such misinformation.

The record clearly shows that in 1935 the county treasurer installed in his

office a system by which, soon after the tax rolls for each year are delivered to him, he causes to be written in triplicate tax receipts for each piece of property in Oklahoma county. These receipts are kept in a separate jacket for each piece of property. In August, 1940, tax receipts for 1930, 1931, 1935, and those for 1936 to 1940 were in the jacket kept for said property. Schwarze testified that Ross told him that the two checks he gave in August, 1940, paid all the back taxes on said property. He was positive in this testimony, but his testimony on many other details was unsatisfactory in that he could not answer many questions. The testimony of Ross was likewise unsatisfactory. At one time he testified positively that he examined the jacket containing the receipts for this property and that he did not tell Schwarze that he was paying all his back taxes, and at another time he testified that he did not know whether or not he told Schwarze he was paying all his back taxes.

The plaintiffs, in order to demonstrate that their contentions are correct, point to the testimony of Schwarze that in August, 1940, he told Ross that he wanted to pay all his taxes on said property, and that he was advised by Ross that he was paying all his back taxes, also to the testimony of Ross that he did not know whether he so advised Schwarze, also to the fact that Schwarze had money in the bank with which to pay said taxes, also to the fact that there was a pencil notation on the tax record "paid 3-5-1940," and that Ross must have relied upon that record when he advised Schwarze that he was paying all his taxes.

The defendant, in order to sustain the finding of the trial court, points to the testimony that the property had been advertised at the 1940 resale for the delinquent taxes up to and including the 1935 taxes, and that Schwarze, like many other property owners, probably intended to pay only enough of the back taxes to take it off the resale, which would not include the taxes subsequent to those for 1935, also to the testimony of Ross that in all cases where owners desired to pay their back taxes he examined the jacket containing receipts filled out for each of the years for which there were unpaid taxes, and that he followed this practice in the present case, and that at one place in his testimony he testified that he did not tell Schwarze that he had paid all his taxes against said property, also to the fact that Schwarze regularly paid his taxes on other property owned, also to the testimony that the receipts for 1930, 1931, and 1935 were marked issued on August 8, 1940, thus tending to corroborate the testimony of Ross that he saw Schwarze in the office but the one time, and the three receipts were issued the same day, also to the fact that he had the receipts for the taxes he paid on this property in 1933 and 1934, for the years 1932 and 1934, thus showing that he kept his records and had knowledge of the taxes that he had paid, also that in September, 1937, he had a complete abstract made on the property so that he could borrow $400 on the same, which he did, and that the abstract showed the 1936 taxes not paid, also to the fact that under the efficient system in use in the treasurer's office the jacket which would be examined in receiving any taxes would reflect all back taxes not paid, also to the fact that the testimony of Schwarze that a few days after he paid the taxes for 1931 and 1935 the deputy called his attention to the fact that he had not paid the 1930 taxes is incredible, since a deputy in a busy office would not likely examine the jacket containing the receipts a second time and on his own motion, to check as to other taxes that were unpaid, also to the fact that Schwarze learned that the property had been sold at the tax resale several days before the resale deed was executed and delivered to Carver, during which time Schwarze could have redeemed the property from the resale.

This, being an action to quiet title, is one of equitable cognizance, in which

the appellant has the burden of showing that the judgment of the trial court is clearly against the weight of the evidence. Maynard v. Hustead, 185 Okla. 20, 90 P. 2d 30. We have carefully considered the evidence and the contentions of the parties and are unable to say that the appellants have sustained the burden cast upon them. The trial court was justified in finding that Schwarze did not intend to pay all his back taxes in August, 1940, but intended to pay only enough to prevent the property from being sold at the 1940 resale, and that Ross followed the custom that obtained in the office of consulting the jacket containing the receipts for taxes not paid. The trial court, who observed the demeanor of the witnesses and their manner of testifying, was in better position to determine what weight to give to the testimony of the witnesses than is this court from a reading of the record.

Affirmed.

OSBORN, BAYLESS, W E L C H , CORN, and ARNOLD, JJ., concur. RILEY and DAVISON, JJ., dissent.

DAVISON, J. (dissenting). I deem it proper to dissent to the majority opinion in this case.

This cause involves the validity of a resale tax deed. The property involved is a five-acre tract of improved suburban acreage situated in Oklahoma county. On June 3, 1941, the land was sold at resale to W. A. Carver for $75.75, and resale deed was executed and recorded.

On June 27, 1941, this action was instituted by Andrew Diehm and Henry F. Schwarze, as plaintiffs, against W. A. Carver, as defendant.

Andrew Diehm held only a nominal interest in the land. The beneficial ownership was in Schwarze.

Schwarze was negligent in paying the ad valorem taxes on the property. In 1940, several years taxes, had been allowed to become delinquent. Whether this was due to intentional omission or to neglect and oversight due to old age (plaintiff was 72 years old when the case was tried) or other causes, is a question which is discussed in the briefs but is not important in this appeal.

In 1940 the county treasurer of Oklahoma county undertook to perform his statutory duty to conduct a tax resale under chapter 66, art. 31, S.L. 1939, pg. 546, et seq. (now 68 O.S. 1941 § 432 et seq., amended in 1941).

For some reason which is not reflected by the record, it was decided to sell the property of plaintiff at resale for the delinquent taxes for only three prior years, 1930, 1931, and 1935. There was then, in 1940, due and delinquent taxes for other prior years (the taxes for which the property involved in this action was sold in the 1941 resale to the defendant) which were not included in the 1940 resale. The 1940 resale was due to commence on the second Monday in May (ch. 66, art. 31, sec. 1, S.L. 1939), and continue thereafter from day to day until completed (sec. 5, idem).

The completion of the 1940 resale was delayed by litigation instituted by S. D. Huddleston, a property owner delinquent in the payment of his taxes. This court decided the resale should be held. Huddleston v. Vahlberg, Co. Treas., 187 Okla. 541, 104 P. 2d 434. Our decision was in June of 1940. Rehearing was denied in July of the same year.

The status of the continuing resale was such that plaintiff's property had not been sold when in August of 1940 he visited the county treasurer's office for the purpose of paying some or all of the taxes due on the property.

Schwarze made two payments on taxes due against the property, one for $10.05 by check dated August 5, 1940, the other for $2.74 by check dated August 9, 1940. These payments were sufficient to and did remove the property from the 1940 resale. They did not, however, pay the delinquent taxes then due against the property for which it was later sold at the 1941 resale to the defendant, Carver.

Schwarze's testimony is that when the payments were made he sought to pay all delinquent taxes against the property. On this point he is not corroborated by the deputy county treasurer who handled the transaction.

Counsel for the plaintiff invoke as applicable the rule announced by this court in Headley v. Hall, 191 Okla. 352, 129 P. 2d 1018, wherein we held that:

"Where the nonpayment of delinquent taxes against property is due to the misinformation or miscalculation of the tax collector, upon inquiry by the property owner, and the property owner has acted in accord with such misinformation or miscalculation and in good faith done all that was thereby required to discharge his property from the tax burden, any tax deed issued against the property so long as the owner remains in ignorance of another or greater tax burden will be treated as subject to cancellation upon equitable considerations. . . ."

See, also, Grimes v. Carter, 185 Okla. 469, 94 P. 2d 544, and Martin v. Bodovitz, 194 Okla 614, 153 P. 2d 825.

There is a dispute between the parties to this appeal as to whether the uncontradicted evidence or the preponderance of the weight of the evidence is such as to establish that Schwarze's oral, express request as to the existence of delinquent taxes brought him within the doctrine of Headley v. Hall, supra. To settle this dispute with reference to the existence, weight, and sufficiency of the evidence would require a detailed analysis thereof. However, under the circumstances of this case, our decision should not rest on such an analysis.

The plaintiff made two payments of taxes on the property in August of 1940. He received receipts in connection with those payments. The amount of any delinquent taxes should have been indorsed in red ink upon the receipts. The record indicates that such indorsement was not made on the receipts or either of them

When any taxes are paid upon property in this state, the payment constitutes an inquiry as to the existence of unpaid delinquent taxes. Our statutes impose on the county treasurer the duty to impart correct and adequate information as to the existence of delinquent taxes against the property. The manner of imparting such information is specifically prescribed by statute. The method designated is calculated to challenge the attention of the taxpayer. Indorsement in red ink on the tax receipt of the amount of delinquent taxes is a positive and unequivocal requirement of our statute. 68 O.S. 1941 § 201 provides:

"The county treasurer of each county upon receipt of said tax rolls, shall proceed with the collection of the taxes as therein extended, issuing in triplicate receipts upon all collections delivering the original to the taxpayer and filing the triplicate with the county clerk; Provided, that said receipts shall be in manner and form, the same as the tax rolls and shall have printed on them the several items of levy, by and upon which tax is authorized and collected, and shall *have indorsed thereon in red ink the amount of delinquent taxes levied against the property.*" (Emphasis ours.)

This statute is a legislative declaration which rests on the same principles and considerations as the judicial declaration of the Supreme Court of the United States in Dubois v. Hepburn, 10 Pet. 1, 9 L. Ed. 325, and of this court in Grimes v. Carter, supra, Headley v. Hall, supra, and Martin v. Bodovitz, supra, — the principle that property owners who desire to pay their taxes are entitled to correct and adequate information concerning the amount of the government's past due claims against the property. (See, also, Parsons v. Wrble, 21 Idaho, 695, 123 P. 638; Fix v. Gray, 26 Idaho, 19, 140 P. 771.)

The statute, section 201, supra, creates a salutary distinction between property owners who desire and attempt to pay their taxes and those who purposely or negligently pay no attention whatever to the burdens of government imposed upon property. If followed and

accorded vitality by judicial application, it would protect the former without affording protection to the latter.

It is not uncommon for a person who owns property to overlook the payment of a tax installment. Such mistakes are easily made, especially by people not familiar with business. Such people, however, in the normal course of affairs, continue to pay subsequent taxes without making such a specific inquiry as is contemplated by the rule announced in Grimes v. Carter, supra, Headley v. Hall, supra, and Martin v. Bodovitz, supra. Their failure to make such inquiry is due to ignorance of the fact that there is any probability of unpaid delinquent taxes.

If section 201, supra, is followed by the county treasurer, tax-paying property owners are accorded an adequate warning. If the statute is not followed, a subsequent tax deed should be voidable upon the principles and under the holding in Grimes v. Carter, supra, Headley v. Hall, supra, and Martin v. Bodovitz, supra. Under our statute, section 201, supra, every payment of taxes constitutes a specific inquiry as to delinquent taxes against the property. The law contemplates that such information shall be furnished on the payment of any taxes without additional request.

The view herein advocated would not make an unwarranted hardship on the careful purchaser at a tax sale. The law requires that receipts for taxes be issued by the county treasurer in triplicate, the original to the taxpayer and the triplicate to the county clerk. The indorsement of delinquent taxes being a part of the original would necessarily appear on the copies thereof, although the color of the ink used in making the indorsement might not be apparent. Section 201, supra.

The purchaser or prospective purchaser at tax sale can readily ascertain by examination of information available at the office of the county treasurer or county clerk whether the amount of delinquent taxes has been indorsed as required by section 201, supra.

There is no sound reason for refusing to judicially recognize the validity of section 201, supra. It is as vital to the rights of the property owner as are the provisions of the tender statutes to purchasers at tax sale. The vitality and effectiveness of the tender statutes have been recognized by this court. Parks v. Lyons, 183 Okla. 529, 83 P. 573, and subsequent cases following that decision.

When a property owner pays taxes on his property and receives a tax receipt for such payment on which there is no indorsement in red ink of delinquent taxes, the property should not thereafter be legally sold for taxes which were delinquent when the tax receipt was issued unless the property owner was thereafter reliably and actually advised of such delinquent taxes before the sale date.

As applied to the case at bar, our examination of the tax receipts introduced in evidence fails to disclose the indorsement required by section 201, supra.

In the cases of Parsons v. Wrble, supra, and Fix v. Gray, supra, the Supreme Court of Idaho in dealing with a statute requiring a red ink indorsement of delinquencies in connections with tax sale proceedings decided the indorsement was required for the benefit of the property owner, and held that the failure of the officials to make such an indorsement rendered a sale for taxes voidable.

The cases are analogous to the case at bar with respect to the character of indorsement and the judicially declared purpose of the Idaho statute corresponds with the obvious purpose of our statute, namely, information and notice to property owners.

The reasoning of the Idaho court in Parsons v. Wrble, supra, is particularly appropriate. It was therein said:

"In the case at bar Wrble allowed his taxes to go delinquent for the year

1904, and his land to be sold for such tax. On the other hand, he paid his taxes for every subsequent year up to the time of the commencement of this action in January, 1910. Now, had the taxing officer complied with the provisions of section 1755, supra, and entered the assessments for 1905, 1906 and 1907 in red ink, Wrble would have had notice of the sale of his property to the county every year when he called to pay his taxes. On the contrary, this was not done, and he paid his taxes from year to year without redeeming from this tax sale, and it appears that even the collector himself either did not know, or overlooked the fact, that the property had been previously sold to the county for delinquent taxes, and one of the employes in the assessor's office advised Wrble, after the commencement of this action, that there were no taxes due on his land, and that everything had been paid. During all this time Wrble was in possession of the land, cultivating and improving it. It also appears that he is an ignorant foreigner, who does not understand our language or customs very well.

"It is the purpose of the revenue law to give ample notice to the property owner before taking his property for a tax or assessment. It therefore provides for various notices, both actual and constructive, prior to a delinquent sale. It then gives him a period of three years in which to redeem from such sale (section 1770), and in case of sale to the county it gives him the additional notice of requiring that all subsequent assessments during the period of redemption specifically indicate by a red ink entry that the land has previously been sold to the county for delinquent taxes. This is a special protection given the property owner, to enable him to redeem his property and save the title. In such cases he is practically given notice each year for three years, in case he pays his taxes each subsequent year after the delinquency occurs."

We should hold that under the law of this state the plaintiff's appearance at the office of the county treasurer and payment of taxes on the property amounted to an inquiry as to the existence of other delinquent taxes against the property; that the failure of the county treasurer to impart that information by indorsement on the tax receipt rendered the subsequent sale for such delinquent taxes against the property voidable.

It is appropriate to note that the vital function and purpose of section 201, supra, was not considered or recognized by this court in Jepeway v. Barrett, 165 Okla. 220, 25 P. 2d 661, and that our holding in Jepeway v. Barrett, supra, was followed without analysis in McNaughton v. Beattie, 181 Okla. 603, 75 P. 2d 400. To the extent those cases conflict with the views herein announced they should be modified.

It is argued that the county treasurers of this state have been guided by Jepeway v. Barrett, supra, and that an alteration of our rule at this time would add confusion to the procedure for selling property. Any change in the law will create some uncertainty and confusion, however, it is appropriate to observe that the partial payment of taxes does not often occur and in instances where it does occur, appropriate notification can be given the taxpayer and the power to sell property for delinquent taxes can again be exercised.

For the reasons state, I respectfully dissent.