County Lands — Contracts — Leases — Expositions The present 50-year lease contract between the County Commissioners of Tulsa County and the Tulsa Exposition and Fair Corporation is not a legally valid and binding agreement. The Attorney General has had under consideration your request of August 5, 1968, for an opinion on the status of a certain lease agreement between the Board of County Commissioners of Tulsa County and the Tulsa Exposition and Fair Corporation and of the property which was the subject of said lease. Your specific questions are: "(1) In light of your conclusions in Attorney General's Opinion No. 67-106, is the fifty (50) year lease contract referred to herein, between the Board of County Commissioners of Tulsa County, Oklahoma, and the Tulsa Exposition and Fair Corporation, a legally valid and binding agreement? "(2) If this lease agreement is void, what are the duties imposed by law, upon the Board of County Commissioners of Tulsa County, regarding the county-owned property presently in possession of the Tulsa Exposition and Fair Corporation by virtue of this lease?" Attorney General's Opinion No. 67-106, to which you refer, related to the validity of the requirement of 2 O.S. 156k [2-156k] (1961), that $25,000.00 be appropriated annually by boards of County Commissioners for the establishment and operation of "agricultural and industrial expositions and fairs" in "all counties of the State of Oklahoma having a population of one hundred thousand (100,000) or more, and less than two hundred thousand (200,000) population." In holding the requirement of said Section 156k to be invalid, the opinion concluded that the entire act of which it was a part, to-wit: 2 O.S. 156 [2-156] through 2 O.S. 156q [2-156q] (1961) (originally enacted in 1943) was unconstitutional and invalid as a special act. Your present questions relate to the consequences flowing from the invalidity of certain other sections of the act concerned, and most particularly of Section 156b. Said Section 156b provides in pertinent part: ". . . The Board of County Commissioners, if, in its judgment, it would be for the best interests of such Exposition and Fair and those interested therein, may, at any time, remove the entire Board of Directors and Secretary-Treasurer in the following manner: (a) By resolution of the Board of County Commissioners, entered in the Commissioners' Journal of proceedings, setting forth its intention to lease the grounds, buildings, equipment and facilities to a non-profit corporation of the State of Oklahoma for the purpose of holding in the Fall of each year the annual Agricultural and Industrial Exposition and Fair herein provided for and such other additional public purposes or incidental purposes as may be agreed upon, and upon such terms and conditions as may be agreed upon, such non-profit corporation to be incorporated for the specific purposes, among others, hereinabove set forth; . . . After such contract has been entered into . . . the Board of Directors shall deliver over to the lessee named in such lease all of the grounds, buildings, equipment and other property, tangible and intangible, real and personal, of such Exposition and Fair then in its possession and under its control, to be held and used by said lessee under the terms and provisions of said lease . . . ." of said lease . . . ." The above quoted alternative method of operating an agricultural and industrial exposition and fair under the act was authorized by a 1949 amendment to the basic act. And you inform us that in 1949 the Board of County Commissioners of Tulsa County availed itself of these provisions and entered into a contract with the Tulsa Exposition and Fair Corporation pursuant thereto. You inform us that the original lease contract was for a period of 10 years. You further inform us as follows: ". . . Pursuant to the 1949 lease, the Tulsa Exposition and Fair Corporation entered into possession of certain property owned by Tulsa County and, by virtue of subsequent lease agreements, renewals and extensions, this corporation is, as of the date of this correspondence, in possession of this county property. The 1949 lease was replaced by a lease contract executed by the Board of County Commissioners of Tulsa County and the Corporation on April 11, 1955. This lease was for a period of ten years, with the same intent and import as the 1949 lease, to-wit: generally, for the purpose of conducting an annual exposition and fair; managing the properties; and constructing and maintaining improvements on the premises in question. Thereafter, on June 23, 1963, these same parties entered into an agreement whereby the term of the 1955 lease would be extended for a period of fifty (50) years upon the performance of certain conditions provided for therein. Further, on November 2, 1964, the Board of County Commissioners, by resolution, determined that the conditions precedent provided for in the 1963 extension agreement had been met, thus extending the lease term for a period of fifty ($0) years, to be effective April 11, 1965, the date of termination of the 1955 lease agreement. Copies of the specific instruments referred to are submitted for your assistance. There were numerous incidental agreements and amendments of agreements during the period of time (1949-1964) which have no material bearing on the questions involved herein and have therefore been omitted from this summary. This office is not aware of any existing agreements, involving Tulsa County, entered into by virtue of the 2 O.S. 1961 Sections 156[2-156] [2-156] et seq., other than referred to herein." We accept as a conclusion of fact your statement that the 1949 lease agreement was entered into by the Board of County Commissioners pursuant to the purported authority of Section 156b, as amended, supra. It also appears clear that the subsequent agreements, renewals, or extensions, also stem from this purported authority. In consideration of all of the foregoing and of this conclusion of fact in particular we are of the opinion that the holding of the Oklahoma Supreme Court in the case of State ex rel. Tharel v. Board of County Com'rs of Creek County, 188 Okl. 184,107 P.2d 542, determines the answer to your first question. The first paragraph of the syllabus by the court states: "The general rule is that an unconstitutional statute, though having the form and name of law, is in reality no law, but is wholly void, and in legal contemplation is as inoperative as if it had never been passed. It imposes no duties, confers no rights, bestows no power or authority on anyone, affords no protection and justifies no acts performed under it." The body of the opinion, starting at page 546 of the national reporter citation, states the rule more fully as follows: "a. We begin with an elementary principle of constitutional law: `When a statute is adjudged to be unconstitutional, it is as if it had never been. Rights cannot be built up under it; contracts which depend upon it for their consideration are void; it constitutes a protection to no one who has acted under it, and no one can be punished for having refused obedience to it before the decision was made.' Cooley's Constitutional Limitations, Eighth Ed., page 382." (Emphasis added) The Attorney General herein adheres to the conclusions of Opinion No. 67-106 that 2 O.S. 156 [2-156] through 2 O.S. 156q [2-156q] (1961), are unconstitutional and invalid as a special act. It then follows that any lease contract or other agreement made pursuant to the provisions of said act is void. Premises considered, it is the opinion of the Attorney General in answer to your first question that the present 50 year lease contract between the Board of County Commissioners of Tulsa County and the Tulsa Exposition and Fair Corporation is not a legally valid and binding agreement. Accepting your statement that the property now in the possession of the Tulsa Exposition and Fair Corporation by virtue of the lease contract is county property as a conclusion of fact, we are of the opinion that the answer to your first question necessarily implies that the Board of County Commissioners should now act to regain possession of said property and/or make such further order in regard to such property as the Board may be authorized by valid law to enter. We explicitly limit our opinion to our conclusion, premises as stated herein considered, that the Corporation may claim no rights under 2 O.S. 1961 Sections 156[2-156] [2-156] through 156q, or by virtue of agreements made pursuant to any purported authority of said act. We feel that it is appropriate — though not necessary in answering your specific questions to call your attention to certain dicta in the case of Headley v. Hall, 191 Okl. 352, 129 P.2d 1018, which cited the Tharel case, supra, with approval, and wherein it is pointed out that administrative officers acting in good faith under an unconstitutional law generally are excused from any penalty therefor. Other dictum in the opinion states the rule that no rights, etc., are acquired under an unconstitutional law should not "in its practical operation have the effect of confiscating property." (Hugh H. Collum)